CORBETT C. WARD, EMPLOYEE, PLAINTIFF v. BEAUNIT CORPORATION, EMPLOYER: AND LIBERTY MUTUAL INSURANCE COMPANY, AND/OR AMERICAN EMPLOYERS INSURANCE COMPANY, CARRIERS, DEFENDANTS.

No. 8110IC535

(Filed 2 March 1982)

1. **Master and Servant § 93.3— workers' compensation proceeding—expert medical testimony—history of plaintiff different from plaintiff's testimony**

    In a proceeding to obtain compensation for disability allegedly resulting from byssinosis, the Industrial Commission erroneously concluded that the testimony of an expert medical witness as to the nature of plaintiff's illness was not competent because the history plaintiff gave the witness differed somewhat from plaintiff's testimony at the hearing and from plaintiff's statements in an insurance application since such conflicts bore only upon the weight to be given to the testimony of the witness, and the witness testified that such conflicts would make no difference in his diagnosis.

2. **Evidence § 50.1; Master and Servant § 93.3— workers' compensation proceeding—expert medical testimony—witness not treating physician**

    In a proceeding to obtain compensation for disability allegedly resulting from byssinosis, the Industrial Commission erroneously concluded that the testimony of an expert medical witness as to the nature of plaintiff's illness

Ward v. Beaunit Corp.

was incompetent because the witness was not a treating physician but had merely examined plaintiff for diagnostic purposes where the witness's diagnosis was based not only upon the history given to him by plaintiff but more specifically upon his own objective examination and tests.

**3. Master and Servant § 97.1— workers' compensation—disability benefits—failure of Commission to consider competent evidence—remand**

An action in which the Industrial Commission denied plaintiff compensation for disability allegedly resulting from byssinosis must be remanded for further proceedings where the Industrial Commission erroneously failed to consider all the competent evidence adduced at the hearing as to what extent plaintiff's disability was caused by his occupational disease.

APPEAL by plaintiff from the Industrial Commission. Order and opinion entered by the Industrial Commission on 22 December 1980. Heard in the Court of Appeals 14 January 1982.

Defendant began working in a textile mill in 1925, and was employed in defendant Beaunit's textile mill in Rockingham from 1943 until he retired because of disability on 1 June 1974. During his employment with Beaunit, defendant was regularly exposed to cotton dust from 1925 through September 1966 and was again exposed to cotton dust from June to September of 1968. From September of 1968 until his retirement, plaintiff worked in synthetic fibers. Plaintiff began smoking when he was 13 years old and smoked 2 or 3 packs a week until he became disabled.

Plaintiff was treated by his family physician Hugh O. Queen, M.D., and was examined and evaluated by John S. Stevenson, M.D., and James E. Hemphill, M.D., a specialist in diagnostic radiology, and Charles D. Williams, Jr., M.D., a specialist in pulmonary disease and a member of the Industrial Textile Occupational Disease Panel.

At plaintiff's initial hearing on 17 October 1978, Deputy Commissioner William L. Haigh heard the testimony of plaintiff, Marie Williams, defendant Beaunit's office manager, and Charles White, who was superintendent of spinning in Beaunit's Rockingham plant. A further hearing was held on 28 March 1979 before Deputy Commissioner J. C. Rush to take the testimony of Dr. Williams. By stipulation of the parties, the initial evidentiary record included an eleven page pulmonary evaluation report by Dr. Williams, reports by Dr. Queen and Dr. Stevenson, and hospital records.

On 14 December 1979, Deputy Commissioner Haigh entered an opinion denying plaintiff's claim. On appeal, the Full Commission remanded the matter for the purpose of taking the further testimony of Dr. Williams, which was accomplished at a hearing before Chief Deputy Commissioner Forrest H. Shuford on 22 August 1980. On 16 December 1980, the Full Commission entered an opinion in which it made additional findings of fact and conclusions of law and, as amended, adopted and affirmed Deputy Commissioner Haigh's order. On 22 December 1980, the Full Commission entered a second opinion in which it amended its 16 December 1980 opinion. This had the effect of further amending Haigh's opinion, and otherwise affirming it.

Plaintiff testified in detail as to the conditions at defendant Beaunit's mill during his employment there. His testimony shows that he was regularly exposed to substantial amounts of cotton dust over a period of about 40 years, his last exposure being in 1968. Plaintiff testified that he had to quit work in May of 1974 because of breathing difficulties. He had first started having these problems the previous winter, then he noticed a cough a few months before he quit work and then he noticed shortness of breath a month before he quit. Plaintiff visited Dr. Queen for treatment for his breathing difficulties and Dr. Queen advised him to stop working. Plaintiff also testified that he smoked cigarettes for about 50 years.

Dr. Queen, plaintiff's attending physician, stated in his June, 1974 reports that plaintiff was suffering from emphysema and osteoarthritis of the lumbar spine. A hospital discharge report covering plaintiff's hospitalization from 3 June 1974 to 4 June 1974, showed plaintiff's primary diagnosis as lumbar strain, advanced osteoarthritis of the lumbar spine, with a secondary diagnosis of mild emphysema. A subsequent report by Dr. Queen, covering plaintiff's hospitalization from 14 August 1974 to 15 August 1974, showed plaintiff's primary diagnosis as chronic obstructive lung disease, with secondary diagnosis of hyperlipidemia and arteriosclerotic heart disease. Dr. Queen's 24 hour note on plaintiff's hospital admission contained the following pertinent statements:

8-14-74

This 62 year old white male was admitted here for evaluation of chest pain and emphysema, which had been detected earlier on a previous admission some 2 months ago. Since his last admission he has felt considerably better and has lost several pounds and is breathing much better.

. . .

X-ray of the chest is unchanged since 6-4-74 and the thoracic aorta is ectatic with prominence of the ascending portion suggestive of hypertensive changes and other changes consistent with pulmonary emphysema.

. . .

Electrocardiogram showed normal sinus rhythm with poor progression of the R wave in Lead V1-V3, with a strong possibility of old antero-septal wall infarction.

. . .

DISCHARGE DIAGNOSIS: CHRONIC OBSTRUCTIVE LUNG DISEASE. HYPERLIPIDEMIA. ARTERIOSCLEROTIC HEART DISEASE.

DR. H. O. QUEEN

Dr. Hemphill's report of 4 August 1974 stated that plaintiff's "[L]ungs show bilateral diffuse pulmonary emphysema but no recent pulmonary infiltration" and also described plaintiff's lumbar spine condition.

Dr. Queen's history and physical report of 27 September 1976 contains the following pertinent entries:

HISTORY & PHYSICAL
9-27-76

CHIEF COMPLAINT: Chest pain and anxiety.

PRESENT ILLNESS: About 12 hours before admission he became acutely anxious and soon began wheezing and coughing. . . .

PAST HISTORY: He has a long history of severe chronic obstructive lung disease with asthma and angina on moderate exertion due to arteriosclerotic heart disease. He has had a[t]

(sic) least 1 documented myocardial infarction. He also has rather marked generalized osteoarthritis involving all of his peripheral joints and spine.

. . .

MYOCARDIAL ISCHEMIA.
ARTERIOSCLEROTIC HEART DISEASE.
CHRONIC OBSTRUCTIVE LUNG DISEASE.
ANXIETY.

At the request of defendant Liberty Mutual, Dr. Williams examined plaintiff on 8 May 1978. At the 28 March 1979 hearing, Dr. Williams testified that his examination involved taking a medical history, a physical examination, blood tests, pulmonary studies, chest x-rays, and an electrocardiogram. All of his pertinent findings were included in his report, which was stipulated into evidence. In his report he testified that he diagnosed plaintiff as having byssinosis Grade III, pulmonary emphysema, and chronic bronchitis. In his opinion, these diseases he diagnosed in plaintiff were due to causes and conditions peculiar to plaintiff's employment to which the general public is not equally exposed outside of the employment. In his opinion, plaintiff was totally and permanently disabled in his ability to work for wages. Dr. Williams testified that plaintiff's lung diseases were probably caused by exposure to cotton dust, but he also testified that plaintiff's post-1968 employment in synthetic production under dusty conditions aggravated plaintiff's symptoms, caused him to be worse (sic), and that exposure to that dust was harmful.

In his report, which was stipulated into evidence at the 8 May hearing, Dr. Williams indicated that he had diagnosed other diseases affecting plaintiff's ability to work. He was asked nothing about these findings, either on direct or cross-examination. His findings were summed up in the discussion part of his report, as follows:

It is the opinion of this examiner that the individual does have byssinosis, this diagnosis being based on typical symptoms of chest tightness and dyspnea on exposure to occupational dust with Monday Morning exacerbation. In addition, he has the usual clinical x-ray and pulmonary function findings of chronic obstructive pulmonary disease. Undoubtedly, cigarette smoking is a contributory factor in the production

of his pulmonary emphysema and chronic bronchitis. It is not possible to state what percentage of his disability resulted from various contributory factors.

The individual is totally disabled from work due to a combination of chronic obstructive pulmonary disease and arteriosclerotic heart disease with angina pectoris. He would, (sic) not in my opinion, be able to perform work outside of exposure to irritating inhalants. Using a very rough approximation, it is estimated 50% of his disability might be due to dyspnea resulting from chronic obstructive pulmonary disease and 50% from exertional chest pain resulting from arteriosclerotic heart disease.

At the 22 August hearing, Dr. Williams substantially reiterated his previous testimony as to the nature of plaintiff's lung disease, but modified his previous testimony by testifying that plaintiff's exposure to synthetic dust was not harmful. On cross-examination, Dr. Williams testified as to the contents of his report dealing with plaintiff's other diseases, testified that plaintiff's heart diseases were sufficient in themselves to disable plaintiff, and that plaintiff's smoking probably caused his emphysema and his chronic bronchitis, but that plaintiff's bronchitis could have been "occupational".

Deputy Commissioner Haigh entered an opinion in which he concluded that plaintiff had failed to establish that he had the occupational disease byssinosis and denied any award. On appeal, the Full Commission revised Deputy Commissioner Haigh's order by amending one finding of fact and by entering a different conclusion of law. These will be discussed in the body of our opinion.

Plaintiff has appealed the order of the Full Commission denying his claim.

*Hassell and Hudson, by Robin E. Hudson, for plaintiff-appellant.*

*Mason, Williamson, Etheridge & Moser, P.A., by James W. Mason, for defendant-appellee Liberty Mutual Insurance Company.*

*Young, Moore, Henderson & Alvis, by William F. Lipscomb, for defendant-appellee American Employers Insurance Company.*

WELLS, Judge.

Under the provisions of G.S. 97-86, the Industrial Commission is the fact finding body, and findings of fact made by the Commission are binding on appeal if supported by competent evidence. *Walston v. Burlington Industries*, 304 N.C. 670, 285 S.E. 2d 822 (1982); *Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E. 2d 101 (1981); *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981). In making its findings of fact, however, it is the duty of the Commission to consider, weigh, and evaluate all of the competent evidence before it. *Harrell v. Stevens & Co.*, 45 N.C. App. 197, 262 S.E. 2d 830 (1980); *disc. rev. denied*, 300 N.C. 196, 269 S.E. 2d 623 (1980). In making its findings of fact, the Commission may not ignore, discount, disregard or fail to properly weigh and evaluate any of the competent evidence before it. *Harrell*, supra. The Commission has failed in this aspect of its duty in this case and the case must therefore be remanded.

To begin our analysis, we note that the opinion consists of three main sections, labeled as "findings of fact," "comment" and "conclusions of law." The findings of fact include much mere recitation of evidence which does not rise to the level of fact finding. The findings of fact include conclusions. The "comment" portion includes referrals to the evidence, findings of fact, discussions of case law, and conclusions. Opinions from the Commission written in this way make appellate review more challenging than it perhaps need be.

In the first 18 findings of fact, the opinion deals generally with plaintiff's employment and health history, his regular exposure to cotton dust in his employment for about 41 years, his smoking habits, and the onset of plaintiff's breathing difficulties in early 1974. The problems begin with finding of fact 19, where the opinion begins to deal with the testimony of Dr. Williams, and continue in findings 21, 23 and in the findings and conclusions reached in the "comment" section of the opinion. Because of the nature of the errors reflected in the opinion, we find it appropriate to quote at some length:

19. On 5-8-78, plaintiff was seen by Dr. Charles Williams, Jr. for pulmonary evaluation. His report indicates that plaintiff gave a history of gradual onset of dyspnea beginning about 1974, that at the present time he becomes short of

breath on walking approximately one city block on the level, that he had had some chronic cough and production of sputum for about eight years and that he had no history of asthma but had had frequent wheezing. Plaintiff gave a further history of, among other things, working for 49 years, mostly with cotton but some flax also and synthetic materials and having worked in the card room approximately 30 out of the 49 years, retiring in May 1974. In addition, for the last 4-5 years of work he noticed some chest tightness and shortness of breath related to occupational dust exposure. It was further reported that he stated this was definitely worse on Monday and would become improved later in the week, that as time went by his symptoms were as severe on one day of the week as another and that he also had frequent nasal congestion for several years. *To the extent that this history given by plaintiff is in conflict with or not corroborative of the facts as heretofore found, it is not accepted as competent credible evidence.* (Emphasis supplied)

. . .

21. In the "Discussion" section of his report, Dr. Williams stated:

"It is the opinion of this examiner that the individual does have byssinosis, this diagnosis being based on typical symptoms of chest tightness and dyspnea on exposure to occupational dust with Monday morning exacerbation. In addition, he has the usual clinical X-ray and pulmonary function findings of chronic obstructive pulmonary disease. Undoubtedly, cigarette smoking is a contributory factor in the production of his pulmonary emphysema and chronic bronchitis. It is not possible to state what percentage of his disability resulted from various contributory factors. . . ."

Dr. Williams was of the further opinion that plaintiff is totally disabled from work due to a combination of chronic obstructive pulmonary disease and arteriosclerotic heart disease with angina pectoris and that he is not able to perform work outside of exposure to irritating inhalants. Dr. Williams estimated that 50% of plaintiff's disability might be due to dyspnea resulting from chronic obstructive pulmonary disease and 50% from exertional chest pain resulting from

arteriosclerotic heart disease. *Dr. Williams' report, including his assessment regarding byssinosis is without probative force or evidentiary value inasmuch as two of the principal bases thereof are not supported by credible evidence of record.* (Emphasis supplied)

. . .

23. Plaintiff's disability is not due to an occupational disease caused by exposure connected with and arising out of his employment by the defendant-employer, but rather is due to arteriosclerotic heart disease, remote anterior myocardial infarction and angina pectoris compensated, none of which was caused by any element connected with the employment of plaintiff by the defendant-employer.

### COMMENT

In reaching the decision in this case, the undersigned has carefully considered the evidence of record and the conflicts therein. In particular, careful consideration has been given to the evidence relating to the periods of exposure to cotton dust.

"Full fact-finding authority is vested in the industrial commission. G.S. 97-84. In exercising this authority, the industrial commission, like any other trier of facts, is the sole judge of the credibility and weight of the evidence. *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760; *Beach v. McLean,* 219 N.C. 521, 14 S.E. 2d 515. As a consequence, it may accept or reject the testimony of a witness, either in whole or in part, depending solely upon whether it believes or disbelieves the same. *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265." *Moses v. Bartholomew,* 238 N.C. 714, (1953).

In addition, the undersigned notes that although Dr. Williams' report was stipulated as that which he would testify to, *said report with respect, in particular, to the assessment regarding byssinosis is without probative force or evidentiary value inasmuch as two of the principal bases thereof are not supported by credible evidence of record.* (Emphasis supplied) On the one hand, plaintiff testified at the hearing that he first had breathing trouble in the winter of 1973-1974, whereas the history given to Dr. Williams

reflected onset of chronic cough for about eight years and some chest tightness and shortness of breath for the last 4-5 years of work. Furthermore, the credible evidence establishes that plaintiff was last exposed to cotton dust in September 1968, whereas the history given reflects plaintiff having worked for 49 years mostly with cotton but also some flax and synthetic materials. *In view of the facts found concerning periods of exposure to cotton dust and the onset of plaintiff's breathing difficulties, the undersigned is constrained to conclude that there is no competent credible medical evidence of sufficient probative force or evidentiary value which would tend to establish that plaintiff has an occupationally related pulmonary disease.* (Emphasis supplied)

As recognized in *State v. Wade*, 296 N.C. 454 (1979), a treating physician may give his opinion on the basis of history supplied by his patient and may testify to the facts, including said history, upon which that opinion was based and as pointed out in *State v. Bock*, 288 N.C. 145 (1975), the Court citing *Penland v. Coal Co.*, 246 N.C. 26 (1957), the physician's opinion is not ordinarily inadmissible because it is based wholly or in part on statements made to him by the patient ". . . if those statements are made in the course of professional treatment and with a view of effecting a cure or during an examination for the purpose of treatment and cure.. . . In such a situation it is reasonable to assume that the information which the patient gives the doctor will be the truth, for self-interest requires it." Furthermore, even where the patient's statements are inherently reliable, such as when given to a treating physician, they are not admissible as substantive evidence and thus do not constitute factual evidence unless corroborated by other competent evidence. *Wade, Supra.*

Of significance to the instant case, the Court in *Bock* went on to hold that the witness's testimony therein was incompetent, the witness not having examined the defendant for purposes of treatment as a patient but rather for the purpose of testifying as a witness for the defendant at trial. The Court noted that in the latter situation, the motive which ordinarily prompts a patient to tell his physician the truth is absent.

*Considered in view of the above and except for the stipulation of the parties, Dr. Williams' opinion and the history upon which it was based would have been incompetent. Not only was the history itself not inherently reliable inasmuch as Dr. Williams saw plaintiff for evaluative purposes rather than treatment, but also the facts upon which be (sic) based his opinion were not corroborated by plaintiff's testimony.*

*With respect to the effect of the failure of defendants to object to otherwise incompetent evidence, Dr. Williams' report having been stipulated without limitation with respect to the history given, or his opinion based thereon, the undersigned is of the opinion that he must consider said evidence and accord it its full probative force. Bishop v. DuBose, 252 N.C. 158 (1960) and Ballard v. Ballard, 230 N.C. 629 (1949). However, such evidence has no more probative value than it would have had if it had been admissible under established rules of evidence. Caudill v. Insurance Co., 264 N.C. 674 (1965). (Emphasis supplied)*

The record in this case also reflects that defendants through counsel timely objected to, among other things, several hypothetical questions posed to Dr. Williams by plaintiff's counsel at the hearing before Deputy Commissioner John Charles Rush 3-28-79, in Charlotte. Ruling thereon was deferred by Deputy Commissioner Rush to the undersigned, the original hearing officer herein. Upon careful review of the evidence herein, the undersigned is constrained to conclude that said objections should be and they are hereby sustained. One hypothetical question assumed as facts that, among other things, the mill ran mostly cotton and some flax during the latter portion of working and five to six years ran blends of synthetic with some cotton and some flax also cotton, and that about 10 years before plaintiff quit, he first noticed symptoms of coughing, shortness of breath. The above-referenced assumed facts are substantially different from the competent credible evidence of record concerning the period of exposure to cotton dust and the onset of symptomatology. The other hypothetical question, apparently assuming the same facts as the previous one except that in the last several years of work the portion of cotton flax to the material run

was smaller than in the other area but nonetheless dusty, required dust and that dust aggravated the plaintiff's symptoms and caused him to be worse, was similarily defective. The undersigned concludes that these questions were fatally defective and improper in view of plaintiff's last exposure to cotton dust having been in 1968 and his first having breathing problems in the winter of 1973.

[1] The opinion is affected by errors of law in three respects. First, it reflects the erroneous conclusion that Dr. Williams' testimony as to the nature of plaintiff's illness was not competent because the history plaintiff gave Dr. Williams differed somewhat from plaintiff's history as reflected in plaintiff's testimony and in statements made by plaintiff in an insurance application. These conflicts, such as they were, do not affect Dr. Williams' competency, but bear only upon the weight to be given the testimony of Dr. Williams. We also note that the findings as to conflict in the evidence are not supported by the evidence. The opinion confuses plaintiff's history of cough and breathing difficulties, two very different manifestations of respiratory disease. Both plaintiff's testimony and Dr. Williams' report show that plaintiff's onset of dyspnea was in early 1974; both show that plaintiff's coughing symptoms appeared much earlier. Finally, we note that Dr. Williams testified that in his opinion, such differences as there were between plaintiff's testimony and the history which plaintiff gave him would make no difference in his diagnosis.

Dr. Williams' testimony on cross-examination was as follows:

Q. Now, the fact that he did not report any breathing problems until 1974 or the latter part of 1973, would you have anticipated that if this disease was aggravated, that it would have activated his symptoms, that he would have had some breathing problems? Would this have been a normal reaction?

. . .

THE WITNESS: No. I am not particularly troubled by that. I think that the development of the disease is a long-term insidious process. I think whether patients report symptoms or not is subject to a great deal of individual susceptibility and interpretation. I think the symptoms are first brought to the forefront when the patient develops an inter-

current respiratory tract infection such as influenza, chest cold, and for the first time, the symptoms of this underlying insidious disease are brought to their attention.

In *Taylor v. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980), our Supreme Court stated: "It is . . . clear that our legislature never intended that a claimant for workers' compensation benefits would have to make a correct medical diagnosis of his own condition prior to notification by other medical authority of his disease in order to timely make his claim". The clear import of this statement as applied to the facts of this case is that a claimant is not required to be entirely consistent in how he gives his history, in laymen's terms, at hearing with how he communicates his history and timing of his symptoms to his doctor. We find no fatal inconsistency underlying Dr. Williams' clear and unequivocal diagnosis of byssinosis.

[2]  Second, the opinion reflects the erroneous conclusion that Dr. Williams' testimony was not competent or of probative value or force because he was not a treating physician and had merely examined plaintiff for diagnostic purposes. Such a conclusion fails to recognize the implications of the opinions of our Supreme Court in *Taylor v. Stevens & Co.*, supra; *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979); *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979) and numerous other pertinent decisions of our appellate courts in Workers' Compensation cases which post-date *Penland v. Coal Co.*, 246 N.C. 26, 97 S.E. 2d 432 (1957), giving judicial recognition to the need for and validity of medical testimony provided by examining physicians. Commissioner Haigh's opinion fails to recognize the distinguishing aspects of *Penland*, where the examining physician's disputed testimony was based not on objective findings, but upon subjective statements made to him by his patient, the plaintiff in that case. It fails to recognize the implications of the opinion of our Supreme Court in *State v. Wade*, 296 N.C. 454, 251 S.E. 2d 407 (1978), where the Court held a physician's examination to be reliable because it was a thorough, carefully designed attempt to gain an understanding of the subject's state of mind. We quote the statement dispositive of the question here:

Dr. Malony did not rely for his conclusions on any one statement by defendant or on any particular fact he disclosed. In-

Ward v. Beaunit Corp.

stead he took into account the entirety of what defendant said together with his own interpretation and analysis of it and the objective manifestations that accompanied it.

It is obvious here that Dr. Williams' diagnosis was based not only upon the history plaintiff gave him, but more specifically upon his own objective examination and tests. We may take judicial notice that in many industrial disease cases, the testimony of a non-treating physician is necessary to establish the cause of a claimant's disability. Indeed, the Workers' Compensation Act itself recognizes the validity of such evidence. *See* G.S. 97-69 through G.S. 97-73; *Harrell v. Stevens & Co.*, supra. If allowed to stand, the conclusion reached in the opinion under review here would be massively disruptive of the orderly disposition of Workers' Compensation claims, especially in industrial disease claims.

Third, the opinion concludes that portions of Dr. Williams' testimony should not have been allowed because the hypothetical question on which his testimony was based included certain facts not in evidence. The questions alluded to in the conclusion refer to questions asked of Dr. Williams at the 28 March 1979 hearing. The hypothetical put to Dr. Williams at the subsequent hearing on 22 August 1980 asked him to assume facts found in the original opinion; thus, it is obvious that these conclusions have no pertinence to a final opinion. The Commission did nothing to correct these erroneous conclusions in Deputy Commissioner Haigh's opinion, but adopted and affirmed them intact. Thus, we cannot determine whether the Commission, in denying plaintiff's claim, was influenced by these errors in Deputy Commissioner Haigh's conclusions.

[3] In reaching its conclusions adverse to plaintiff's claim, the Commission obviously failed to consider all the competent evidence adduced at the hearing as to what extent plaintiff's disability was caused by his occupational disease, *Wood v. Stevens & Co.*, supra; *Harrell v. Stevens & Co.*, supra, and therefore this matter must be remanded for such further proceedings as are necessary and consistent with this opinion.

Reversed and remanded.

Judges MARTIN (Robert M.) and WEBB concur.