LILLIAN S. HARRELL, EXECUTRIX OF THE ESTATE OF LOUIS F. HARRELL, DECEASED EMPLOYEE, PLAINTIFF v. J. P. STEVENS & CO., INC., EMPLOYER, LIBERTY MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 7910IC539

(Filed 19 February 1980)

Master and Servant §§ 68, 94— byssinosis—no occupational disease—insufficiency of findings—testimony discounted by Commission—error

In a workmen's compensation action where plaintiff claimed disability benefits alleging that he had become totally and permanently disabled because of byssinosis, findings by the Industrial Commission which basically related plaintiff's physical history, work experience and smoking habits were insufficient to support its conclusion that plaintiff did not suffer from an occupational disease arising out of and in the course of his employment; furthermore, the Industrial Commission erred in "discounting" testimony by a pulmonary specialist concerning plaintiff's condition because the history plaintiff gave to the specialist conflicted with histories he gave to other doctors at about the same time, since the Commission was required to consider all the competent evidence, weigh it, and believe whatever part of the evidence it found credible.

APPEAL by plaintiff from the Opinion and Award of the Industrial Commission filed 15 December 1978. Heard in the Court of Appeals on 15 January 1980.

In this workers' compensation action, plaintiff Louis F. Harrell (now deceased) filed a claim for disability benefits with the North Carolina Industrial Commission on 19 July 1976, alleging that he had become totally and permanently disabled "from impairment of respiratory pulmonary functions" caused by "regular exposure to cotton dust for 37 years in the picking, carding areas." He claimed that he contracted the lung disease, commonly known as byssinosis, in his employment with J. P. Stevens, from which he retired in June 1976. Upon the filing of his claim, the Commission referred plaintiff to Dr. Ted R. Kunstling in Raleigh. Dr. Kunstling, whose evaluation of plaintiff's condition will be set out below, is an internal medicine and pulmonary disease specialist, and a member of the Commission's Textile Occupational Disease Panel.

Defendants Stevens and its insurance carrier denied the claim. Thereupon, at a series of hearings before Deputy Commissioner Christine Y. Denson, the following relevant evidence was developed:

Dr. M. C. Maddrey, a general practitioner in Roanoke Rapids, began treating plaintiff in September 1969 and continued to treat him for various medical problems through December 1976. Dr. Maddrey's diagnosis in 1969 was that plaintiff suffered from hypertension and obesity. By October 1970, Dr. Maddrey observed, "[I]t was indicative that he had some kind of heart condition." In 1972, he diagnosed plaintiff's condition to be the result of "ischemic heart disease, plus a chronic bronchitis, plus obesity, plus arthritis." In his opinion, plaintiff was disabled by "these ailments."

Dr. Maddrey further testified that plaintiff "always complained of breathing" problems and "was always short of breath." He attributed that problem to plaintiff's obesity and did not perform any pulmonary tests. Dr. Maddrey conceded that "I wouldn't know a case of byssinosis if it walked in the door." However, he did refer plaintiff "to the man in town that does pulmonary tests", Dr. William M. Brown, who also treated plaintiff off and on "relative to his heart disease" from 1969 through 1977. In Dr. Brown's opinion, plaintiff's breathing problems were related to his heart disease. He diagnosed him as being afflicted "primarily with heart disease, pain of angina and the shortness of breath, of

the congestive heart condition, and also . . . diabetes." According to Dr. Brown, plaintiff was disabled by heart disease "as a primary reason." On cross-examination, on the other hand, he testified that the symptoms which he attributed to plaintiff's heart disease were also symptoms of chronic obstructive pulmonary disease (COPD), a diagnosis which he did not make but could not refute "at all . . . . When I made the diagnosis that Mr. Harrell had congestive heart failure as opposed to COPD, I did that because I already knew he had heart disease, that he had had it for some years, and that the congestive heart failure would be a naturally expected complication."

In June 1970 Dr. Brown referred plaintiff to Dr. Robert E. Whalen, Director of the Cardiovascular Disease Service at Duke University Medical Center, who was recognized by the Commission as an expert in cardiovascular medicine and whose specific area of practice is "individual patient care of the majority of private patients admitted to Duke for cardiovascular disease . . . ." Dr. Whalen testified that he diagnosed plaintiff's condition in June 1970 to be "arteriosclerotic heart disease." He examined plaintiff again on 30 September 1975 and 12 November 1976 during routine revisits to the Coronary-Artery Disease Follow-Up Clinic. By the November 1976 visit plaintiff was classified as a "Class IV Angina" patient, indicating that he was experiencing chest pain during rest periods and was "generally incapacitated by the pain."

Dr. Whalen also testified that his report prepared pursuant to his examination of plaintiff on 12 November 1976 described his "impressions" of plaintiff's condition to be (1) coronary heart disease, (2) obesity, and (3) COPD, secondary to byssinosis. However, on direct examination, he testified that, in his opinion, plaintiff's heart condition rendered him "100% disabled" and that his heart disease could not have been caused by COPD. On cross-examination, he said that he neither made nor participated in the diagnosis of COPD secondary to byssinosis, but rather, "I think I concurred with the observation of others [the Allergy and Chest Clinic at Duke] who had seen the patient. In our file there are notes raising this possibility. There are pulmonary function studies and there's correspondence concerning this diagnosis." With respect to the cause of plaintiff's disability, Dr. Whalen testified as follows:

I have no disagreement with competent decision about degree of byssinosis or asthma or bronchitis, but, aside from the notes, this man's history and findings show that he had been declared 100% disabled from cardiovascular disease. There is no reason why both couldn't be present at the same time. I would not quarrel with a pulmonary specialist making a similar assessment at the same time.

The record indicates that the pulmonary function study to which Dr. Whalen referred was performed by Dr. Maury K. Topolosky of the Duke Medical Center. Dr. Topolosky's report, dated 26 July 1976, describes his diagnostic impressions of plaintiff to be "1. COPD—moderate to severe probably [secondary] to Byssinosis" and "2. ASCVD [arteriosclerotic cardiovascular disease]—angina . . ." The record also contains reports stipulated into evidence by the parties which show the following:

— A discharge summary from Duke Medical Center dated 8 August 1977 and signed by Dr. Russel E. Kaufman records plaintiff's primary problem to be ASCVD and "Problem #2" to be COPD, "with probable byssinosis."

— A letter to Dr. Maddrey from Dr. Topolosky dated 19 August 1976 states: "It is felt that Mr. Harrell had progression of his cardiac problem. His main problem is his cardiovascular disease. His COPD is a contributing factor, . . ."

— A memorandum dated 5 April 1976 and signed by Dr. Melvin L. Haysman of the Duke Medical Center states: "His major problems are: Arteriosclerotic heart disease with angina pectoris and chronic obstructive pulmonary disease . . . . His pulmonary problem is exacerbated by markedly dusty environments and this further complicates his cardiac status."

Finally, plaintiff offered the testimony of Dr. Kunstling, the pulmonary disease specialist for the Commission's Textile Occupational Disease Panel, who examined plaintiff on 30 June 1977. Dr. Kunstling sent him to Wake Medical Center for pulmonary function studies which indicated "moderate obstructive impairment" before treatment with a bronchodilator. He diagnosed plaintiff's problems as follows:

[H]e has history consistent with byssinosis; he has persisting airway obstruction which would make it [the byssinosis] Grade III; history of chronic bronchitis with chronic productive cough and reversible airway disease; chronic asthmatic bronchitis; he has coronary artery disease with history of myocardial infarction, angina pectoris, atrial fibrillation and has probably had congestive heart failure . . . .

Dr. Kunstling found plaintiff to be "severely impaired" primarily because of "his heart and lung disease." The chronic asthmatic bronchitis and byssinosis added "significantly" to plaintiff's heart disease-related impairment, Dr. Kunstling felt, by placing a "greater strain on his reserved cardiac function." Dr. Kunstling testified further that plaintiff's pulmonary problems resulted mostly from "card room exposure . . . . In my opinion Mr. Harrell has some amount of byssinosis due to the fact that he was exposed to cotton dust."

At the conclusion of the evidence, Deputy Commissioner Denson made findings of fact and concluded that "[p]laintiff does not suffer from an occupational disease arising out of and in the course of his employment with defendant-employer." See G.S. § 97-53(13). She denied his claim, and he appealed to the full Commission which made one change in the findings of fact and, as amended, in a 2-1 decision filed 15 December 1978, adopted as its own the Opinion and Award entered by Denson. Plaintiff thereupon appealed to this Court pursuant to G.S. § 97-86.

*Davis, Hassell & Hudson, by Charles R. Hassell, Jr., for the plaintiff appellant.*

*Maupin, Taylor & Ellis, by Richard C. Titus and Richard M. Lewis, for the defendant appellees.*

HEDRICK, Judge.

The duties of the Industrial Commission, when deciding a claim under G.S. § 97-53(13), have been recently enunciated by our Supreme Court in *Wood v. J. P. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979). Speaking through Chief Justice Sharp, the Court said:

Whether a given illness falls within the general difinition [sic] set out in G.S. 97-53(13) presents a mixed question of

fact and law. The Commission must determine first the nature of the disease from which the plaintiff is suffering — that is, its characteristics, symptoms and manifestations. Ordinarily, such findings will be based on expert medical testimony. Having made appropriate findings of fact, the next question the Commission must answer is whether or not the illness plaintiff has contracted falls within the definition set out in the statute. This latter judgment requires a conclusion of law.

*Id.* at 640, 256 S.E. 2d at 695-96.

In the present case the Commission made the following findings:

### FINDINGS OF FACT

1. Plaintiff . . . has worked in a textile mill all his working life, mostly in the card room. His several jobs required him to be in a work atmosphere that was heavy with both cotton dust and lint.

2. Plaintiff has smoked cigarettes since he was a young boy although he never smoked as much as a pack a day. Although plaintiff claims to have stopped smoking 10 years ago, from credible evidence it is found that plaintiff smoked regularly until at least September, 1975 and has smoked cigarettes occasionally since then.

3. Plaintiff began seeing Dr. M. C. Maddrey, a general practitioner in Roanoke Rapids, in September, 1969. He was diagnosed as suffering from hypertension for which he was given medication and obesity for which he was advised to lose weight.

In November, 1969, plaintiff began to complain of chest pains to Dr. Maddrey and plaintiff was hospitalized. Dr. Brown, an internist in Roanoke Rapids was asked by Dr. Maddrey to consult on plaintiff's case regarding the chest pain. Dr. Brown also noted plaintiff's obesity. Plaintiff was not complaining of shortness of breath.

4. In March, 1970, Dr. Brown hospitalized plaintiff for chest pain and in June referred plaintiff to Duke for an evaluation of the suspected heart problem.

5. Plaintiff was admitted to Duke University Medical Center under the care of Dr. Whalen, a specialist in cardiovascular medicine, from June 14th to June 20th, 1970. After extensive tests, the diagnosis was: (1) arteriosclerotic heart disease with angina pectoris and (2) obesity. Dr. Whalen did not recommend heart surgery at that time, but suggested medication.

Plaintiff was examined routinely and often by Dr. Maddrey or Dr. Brown for the chest pains and the heart medication was continued by them.

6. In September, 1972, plaintiff complained to Dr. Brown of a cough. Dr. Brown's impression was that plaintiff had an acute respiratory infection. The condition responded to treatment and in December, 1972, the condition had cleared.

From that time until 1974, plaintiff would have flare-ups of acute bronchitis treated by Dr. Brown.

7. In February, 1975, plaintiff was hospitalized by Dr. Maddrey for asthmatic bronchitis.

In September, 1975, Dr. Maddrey again hospitalized plaintiff with the following diagnoses: (1) traumatic arthritis of the right knee; (2) asthmatis [sic] bronchitis; (3) obesity. Dr. Maddrey again recommended plaintiff lose weight—both to ease the weight on the knee and to help his breathing.

8. Plaintiff was again seen by Dr. Whalen on September 30, 1975 for a routine check. He indicated he was still having chest pain.

9. On July 26 and again on August 12, 1976, plaintiff was examined by Dr. M. K. Topolosky, a pulmonary medicine specialist at Duke University Medical Center. Plaintiff's complaints were shortness of breath and chest pains and he gave Dr. Topolosky a history indicating that he had these problems both in and out of the work environment. Dr. Topolosky was of the opinion that plaintiff had moderate to severe chronic obstructive pulmonary disease, but that his major disabling factor was his heart.

10. Plaintiff had "retired" from defendant-employer on June 28, 1976. He had requested less strenuous work because of his heart condition, but that had been refused.

11. In November, 1976, plaintiff was hospitalized for his heart condition. Dr. Whalen saw him during November for a routine re-check and concurred that plaintiff was totally disabled as a result of his heart since plaintiff was having chest pains at rest as well as with exertion.

12. In January, 1977, plaintiff went to Dr. Brown complaining of chest pain and shortness of breath. Dr. Brown was of the opinion this was related to plaintiff's heart disease.

13. Plaintiff was in Duke University Medical Center from February 4th to February 13th, 1977. On his way to see Dr. Sieker within the hospital, he suffered a heart attack. The discharge diagnoses were multiple and included: (1) arteriosclerotic cardiovascular disease and the myocardial infarction secondary thereto; (2) chronic obstructive pulmonary disease, probably secondary to byssinosis (plaintiff had given a history of the Monday morning syndrome which is characteristic of byssinosis); (3) obesity and other problems.

14. Dr. Brown examined plaintiff on February 21, 1977 and continued treatment for angina and shortness of breath because of congestive heart failure.

15. Plaintiff saw Dr. Kunstling of Raleigh on the order of the Industrial Commission on June 30, 1977. The history plaintiff gave Dr. Kunstling on which he based his diagnosis of byssinosis is wholly in conflict with complaints given contemporaneously to Drs. Brown, Maddrey, Whalen, and Topolosky and is therefore discounted.

16. Plaintiff's total disability is a result of his heart condition. Plaintiff's heart condition is unrelated to plaintiff's exposure to cotton dust and lint in his employment.

17. The plaintiff has failed to carry his burden of proof that he is disabled as a result of an occupational disease arising out of and in the course of his employment by defendant-employer.

When all of the "findings of fact" made by the Commission are considered in light of G.S. § 97-53(13), and the principles enunciated in *Wood v. Stevens, supra,* it is clear that the Commission has failed to make sufficient definitive findings to determine the critical issues raised by the evidence in this case. [*See also Cannady v. Gold Kist,* 43 N.C. App. 482, 259 S.E. 2d 342 (1979).] Moreover, we note that "findings" numbers 3 through 14 are largely a mere chronicle of the course of plaintiff's treatment by various physicians, their diagnoses and evaluations. At best, they only summarize the evidence.

Assuming that "findings of fact" numbers 16 and 17, although negatively expressed with respect to the essential issues to be determined, are sufficient to support the conclusion that the plaintiff did not suffer from a compensable occupational disease within the meaning of the statute, the statement of the Commission in "finding of fact" number 15 requires that the order be vacated and the cause remanded for further proceedings.

It is the duty of the Commission to consider *all* of the competent evidence, make *definitive* findings, draw its conclusions of law from these findings, and enter the appropriate award. In making its findings, the Commission's function is "to *weigh and evaluate* the *entire* evidence and determine as best it can where the truth lies." *West v. J. P. Stevens,* 6 N.C. App. 152, 156, 169 S.E. 2d 517, 519 (1969). [Emphasis added.] To weigh the evidence is not to "discount" it. To weigh the evidence means to ponder it carefully; it connotes consideration and evaluation; it involves a mental balancing process. To "discount" the evidence, on the other hand, is to disregard it, to treat it as though it had never existed, to omit it from consideration. While the Commission is the sole judge of the credibility of witnesses and may believe all or a part or none of any witness's testimony, *Morgan v. Thomasville Furniture Industries, Inc.,* 2 N.C. App. 126, 162 S.E. 2d 619 (1968), it nevertheless may not wholly disregard competent evidence. Contradictions in the testimony go to its weight, and the Commission may properly refuse to believe particular evidence. But, it must first consider the evidence, and the statute itself so commands in the case of evidence supplied by the Commission's own advisory medical committee. G.S. § 97-71.

We think it significant that the Commission ordered that the plaintiff be examined by Dr. Kunstling, the only pulmonary specialist to diagnose plaintiff's condition. Yet, the Commission inexplicably chose to "discount" his testimony. That the plaintiff might have given contradictory statements of his medical history to Dr. Kunstling does not thereby render his testimony incompetent. As we noted, contradictions in the evidence go to its weight, and the Commission may consider any such inconsistencies in weighing the testimony of Dr. Kunstling and, equally, in weighing the testimony of the other experts.

For the reasons stated, the Opinion and Award of the Commission dated 15 December 1978 is vacated, and the proceeding is remanded to the Commission to consider all the evidence, make definitive findings and proper conclusions therefrom, and enter the appropriate order.

Vacated and remanded.

Judges VAUGHN and CLARK concur.