"O, what a tangled web we weave . . . ."
Plaintiff contends that he injured his back on May 20, 1999, while driving a truck for the employer in interstate commerce when his seat bottomed while traveling on the highway. Plaintiff contends that he stopped shortly after this incident and took a break, although it is not reported on his DOT mandated driving log. Plaintiff contends that he further injured himself on May 20, 1999, while uncoupling the rig. Plaintiff had been reprimanded in the past for failing to provide a timely written report to the employer of alleged injuries and had had prior workers' compensation claims when he had completed the required written Associates Statement of injury; nevertheless, plaintiff did not file a written report of injury with his employer for the alleged May 20, 1999, injury. Plaintiff did not seek medical attention until June 29, 1999, and then for an un-related rib cage complaint, and he denied an accident or traumatic event to the doctor and did not complain about back pain. Plaintiff continued to work for employer until he was laid off as result of the employer's bankruptcy filing. Plaintiff then went to work for another trucking company and continued to work for this company until his claim for unemployment benefits was approved and the trucking company started to take action against plaintiff for unexcused absences. Plaintiff finally sought medical attention for the alleged back injury in October 1999, and examination by several physicians disclosed degenerative disc disease, as was previously found in February 1999, and the physicians are not able to relate a May 20, 1999, incident without relying on the history of plaintiff (a history which is negated by his medical records). Unfortunately, the majority has not reviewed all the proffered evidence to determine whether it is competent and to decide the case based on the weight of the competent evidence.
 I. Absence of Legally Competent Evidence of Injury
Medical evidence came from the depositions of Gary R. Quigg, M.D., and Elmer G. Pinzon, M.D., and the medical records admitted into evidence. The competent medical evidence does not support the majority's conclusion that plaintiff sustained a compensable injury by accident, or alternatively, a specific traumatic incident.
The evidence is undisputed that plaintiff saw Dr. Quigg both before and after the alleged May 20, 1999, injury. In February 1999, plaintiff complained of low back pain, and Dr. Quigg performed a physical examination and ordered x-rays disclosing degenerative disc disease at L3-4 and L4-5 with narrowing of the disc space at L5-S1. Plaintiff was complaining of low back pain but denied any specific trauma or injury. Both Dr. Quigg and Dr. Pinzon explained that degenerative disc disease is generally caused by the aging process and that it gradually develops over time.
Plaintiff next sought medical attention on June 29, 1999, when he returned to see Dr. Quigg. Note that this date is more than a month after the alleged date of injury. At this examination plaintiff complained of pain over his right lateral rib cage. He denied any traumatic incident or accident. There was no complaint of back pain.
Plaintiff continued to work for defendant-employer as a truck driver until he was laid off on July 20, 1999, pursuant to defendant seeking bankruptcy protection. In August 1999, plaintiff went to work for Yellow Freight Systems and worked for them as a truck driver through the end of September 1999, when he ceased to return to work. Coincidentally, while working for Yellow Freight Systems, plaintiff filed a claim for unemployment benefits with the North Carolina Employment Security Commission and falsely asserted that his last employment was with defendant-employer. Plaintiff's return to work for defendant-employer, his employment with Yellow Freight Systems, and his application for unemployment benefits is evidence that plaintiff was able to work (i.e., was not totally disabled) following the alleged May 20, 1999, injury.
Plaintiff returned to Dr. Quigg on October 5, 1999, when he presented with right flank pain. Dr. Quigg suspected a urinary tract infection and had an intravenous pyelogram (IVP) performed which was negative. In conjunction with the IVP, x-rays were taken of plaintiff's abdomen which also revealed the condition of his lumbar spine. Consistent with the February 1999 x-rays, the October 1999 studies revealed mild degenerative disc disease — there was no apparent change in this condition.
Plaintiff then went to see Dr. Beyers who requested an MRI that was performed on October 29, 1999. The MRI revealed degenerative disc disease particularly at the L3-4 and L5-S1 levels of the lumbar spine. Dr. Pinzon performed an EMG and nerve conduction studies and was not able to establish radiculopathy. Dr. Pinzon had a discogram performed which revealed annular tears in the lumbar discs, further consistent with the previous diagnosis of degenerative disc disease.
Dr. Pinzon opined that plaintiff sustained an injury on May 20, 1999, while in the course of his employment based on plaintiff's statements to him that he did not have any prior back problems, that his pain started after this incident, and that plaintiff's symptoms increased after the May 20, 1999, incident. Dr. Pinzon was not aware that plaintiff was diagnosed with and received treatment for degenerative disc disease before the alleged May 1999 incident. Dr. Pinzon was not aware of Dr. Quigg's diagnosis of degenerative disc disease as early as February 1999. Dr. Pinzon agreed that his diagnosis is consistent with diagnosis found by Dr. Quigg, with the exception that as of January 2000 plaintiff was starting to make complaints of radicular pain, although radiculopathy was not confirmed in the electro-diagnostic studies.
Dr. Pinzon testified that truck driving was one of the three most common forms of employment for causing degenerative disc disease and that this condition generally occurs over time, rather than from one specific event. Dr. Pinzon had no medical records, diagnostic tests, or other information to determine whether plaintiff was injured on May 20, 1999. The only information available to lead to this conclusion was the history that plaintiff gave to Dr. Pinzon, a history which is contradicted by the medical history of plaintiff's treatment with Dr. Quigg. Thus, Dr. Pinzon has no competent information upon which to base his conclusion that plaintiff was injured on May 20, 1999. See Smith v. Beasley Enterprises, ___ N.C. App. ___, ___ S.E.2d ___ (2002).
Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions removed from the ordinary experience of laymen, only an expert witness can give a competent opinion as to the nature of and the cause of the injury. Young v. HickoryBusiness Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Expert opinion that rests on speculation and conjecture, or on facts that have been disproved, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of an injury or disease. Youngv. Hickory Business Furniture, supra; Dean v. Carolina Coach Co.,287 N.C. 515. 522. 215 S.E.2d 89, 94 (1975); see also Daubert v. MerrellDow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993). Under the facts of this case, Dr. Pinzon's opinion rests solely on plaintiff's testimony that he did not have back pain before May 20, 1999, and that plaintiff's back pain started following the alleged May 20 injury and continued to get worse. The undisputed medical evidence, however, is:
 1. Plaintiff was diagnosed with degenerative disc disease and treated for back pain in February 1999, before the alleged May 20, 1999, incident;
 2. Plaintiff did not seek medical attention for his back until October 1999, approximately five months after the alleged injury; and,
 3. Plaintiff treated with Dr. Quigg in June 1999 and denied any back pain and denied any injury or trauma.
Injury from disease, including degenerative disc disease from gradual deterioration over time, is not compensable as an "injury" under the Act. N.C.G.S. § 97-2(6); see Griffitts v. Thomasville Furn. Co.,65 N.C. App. 369, 309 S.E.2d 277 (1983), cert. denied, 310 N.C. 477,312 S.E.2d 884 (1984) (degenerative disc disease that pre-existed alleged traumatic injury is not compensable as an "injury" under § 97-2(6). Furthermore, pain while performing work activities does not establish an "injury," because pain is not a compensable injury. Jackson v.Fayetteville Area Sys. of Transp., 78 N.C. App. 412, 337 S.E.2d 110
(1985). Plaintiff was required to establish the nature of the injury from the alleged accident. The majority's finding of a non-descript "injury" when plaintiff previously had degenerative disc disease does not address the requirement of the Commission to define the injury. Id. Further, because the factual basis for Dr. Pinzon's opinion is contrary to the undisputed medical evidence, Dr. Pinzon's opinion is not legally competent. See Young v. Hickory Business Furniture, supra; Dean v.Carolina Coach Co., 287 N.C. 515. 522. 215 S.E.2d 89, 94 (1975); Smithv. Beasley Enterprises, ___ N.C. App. ___, ___ S.E.2d ___ (2002). Seealso Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579,113 S.Ct. 2786 (1993). The degenerative disc disease described by Dr. Pinzon was diagnosed by Dr. Quigg before the alleged accident.
In reviewing the evidence, the Commission is required to determine whether the proffered evidence is legally competent and then must weigh the competent evidence. Smith v. Beasley Enterprises, ___ N.C. App. ___, ___ S.E.2d ___ (2002). Because Dr. Pinzon's opinion that plaintiff was injured on May 20, 1999, is contrary to the medical history in plaintiff's claim, it is not competent evidence and cannot be weighed in determining the issue of injury. In addition, because of the complexity of the medical information, complicated by the fact that plaintiff was diagnosed with degenerative disc disease before the alleged injury and that he is seeking a claim for an accidental injury under Section 97-2(6) rather than an occupational disease, competent expert testimony is necessary to allow the commission to determine whether plaintiff sustained an injury on May 20, 1999. Young v. Hickory BusinessFurniture, supra; Click v. Pilot Freight Carriers, Inc., supra.
For these reasons, I suggest that there is no legal evidence to support the proposition that plaintiff sustained the alleged injury on May 20, 1999. See Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000) (speculation and conjecture is not evidence);Smith v. Beasley Enterprises, ___ N.C. App. ___, ___ S.E.2d ___ (2002) (doctor's opinion not sufficiently reliable to constitute competent medical evidence. See also Daubert v. Merrell Dow Pharmaceuticals,Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible). Whether the evidence is legally competent is a question of law and thereby is subject to review by the Court of Appeals. Smith v. Beasley Enterprises, supra.
 II. Full Commission has Duty to Consider All Competent Evidence
The majority has chosen to accept plaintiff's ever changing and twisting story in order to provide him with workers' compensation benefits. Although the full Commission is generally the final arbiter of credibility, the Commission cannot ignore or refuse to consider competent evidence. Harrell v. J.P. Stevens Co., 45 N.C. App. 197,262 S.E.2d 830, rev. denied, 300 N.C. 196, 269 S.E.2d 623 (1980). The appellate courts have explained the duty of the full Commission:
 "It is the duty of the Commission to consider all of the competent evidence, make definitive findings, draw its conclusions of law from these findings, and enter the appropriate award. In making its findings, the Commission's function is "to weigh and evaluate the entire evidence and determine as best it can where the truth lies." West v. J. P. Stevens, 6 N.C. App. 152, 156, 169 S.E.2d 517, 519 (1969). (Emphasis added.) To weigh the evidence is not to "discount" it. To weigh the evidence means to ponder it carefully; it connotes consideration and evaluation; it involves a mental balancing process. To "discount" the evidence, on the other hand, is to disregard it, to treat it as though it had never existed, to omit it from consideration. While the Commission is the sole judge of the credibility of witnesses and may believe all or a part or none of any witness's testimony, Morgan v. Thomasville Furniture Industries, Inc., 2 N.C. App. 126, 162 S.E.2d 619 (1968), it nevertheless may not wholly disregard competent evidence. Contradictions in the testimony go to its weight, and the Commission may properly refuse to believe particular evidence."
Id. The majority in this case has accepted the plaintiff's testimony in all regards, despite the fact that his testimony has changed on several occasions, and the majority ignores, as if it did not exist, the testimony of Donald L. Janson, Stephen Matthew Ewing, James T. Stallings, Jerry K. Dellinger, Isaac Ted Sowers, Jean Farmer, and Ronald Greenhawk. The majority has erred in this case in failing to consider and evaluate conflicting testimony. Jenkins v. Easco Aluminum Corp.,142 N.C. App. 71, 541 S.E.2d 510 (2001); Harrell v. J.P. Stevens Co., supra.
Rather than reviewing all the competent evidence in this case, the majority has stopped upon finding, in their view, that plaintiff has established a prima facie case; the majority ignores all conflicting evidence. This is consistent with the "viewed in the light most favorable to plaintiff" and "plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence" standard of review that is often espoused by the majority members. This position, however, ignores the duty of the Full Commission to determine whether evidence is competent and then to weigh all the competent evidence before drawing conclusions. See Cauble v. The Mache Co., 78 N.C. App. 793,338 S.E.2d 320 (1986); Wagoner v. Doublas Battery Mfg. Co.,80 N.C. App. 163, 341 S.E.2d 120 (1986); Rooks v. Ideal Cement Co.,9 N.C. App. 57, 175 S.E.2d 324 (1970). The Full Commission is not an appellate body and does not apply the "some evidence" standard of review.See Adams v. AVX Corp., 349 N.C. 676, 509 S.E.2d 411 (1998); Caublesupra; Wagoner, supra; Rooks, supra. Rather the Full Commission has the duty to review objectively all the competent evidence:
 "The plenary powers of the Commission are such that upon review, it may adopt, modify or reject the findings of fact of the Hearing Commissioner, and in doing so may weigh the evidence and make its own determination as to the weight and credibility of the evidence. [citation omitted] The Industrial Commission has the duty and authority to resolve conflicts in the testimony whether medical or not, and the conflict should not always be resolved in favor of the claimant."
Wagoner, supra.
 III. No Evidence of Injury By Accident
The majority finds that plaintiff sustained an injury by accident, and in the event they are wrong, then suggests that plaintiff sustained a specific traumatic event. Setting aside the question of whether or not plaintiff sustained any injury on May 20, 1999, or whether that injury produced the disability that plaintiff contends that accrued in October 1999, the evidence does not support the legal conclusion that plaintiff sustained an injury by accident.
Section 97-2(6) provides in pertinent part:
 "`Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident. With respect to back injuries, however, where injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, `injury by accident' shall be construed to include any disabling physical injury to the back arising out of and casually related to such incident."
Section 97-2(6) prescribes what are commonly referred to as two separate bases to establish compensation for an injury, as opposed to an occupational disease. The first basis is generally referred to as "injury by accident." The second basis reduces the burden on the employee in claims concerning back injuries by removing the requirement of an "accident" and allowing recovery for injury from a "specific traumatic incident" or event. The concept of "accident" requires proof of an unusual condition or untoward event which caused the injury and does not include injury arising from an employee performing their usual duties. See Poe v. Acme Bldrs., 69 N.C. App. 147, 316 S.E.2d 388, cert.denied, 311 N.C. 762, 321 S.E.2d 143 (1984). Bottoming out while hitting bumps in the highway system is not an unusual event for an interstate trucker, is not an untoward event, and is not an accident. Therefore, even if plaintiff is found to have sustained a physical injury from this event, it is not an "accident" within the contemplation of the Act. N.C.G.S. § 97-2(6).
Although the majority may suggest that it is immaterial that there is no "accidental injury" because they have also found a specific traumatic injury, the point herein is that the majority opinion reflects a desire to find in plaintiff's favor without fully analyzing the case under applicable legal principles.
 IV. Failure to Give Thirty-Day Notice
Section 97-22 of the Act states:
 "Every injured employee or his representative shall immediately on the occurrence of the accident, or as soon thereafter as practicable, give or cause to be given to the employer a written notice of the accident . . . but no compensation shall be payable unless written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby."
The evidence is undisputed in this case that plaintiff has not given timely written notice of the alleged May 20, 1999, incident to the employer despite the fact that plaintiff was aware that the employer required its employees to complete a written Associates Statement concerning each alleged injury and plaintiff had been reprimanded in the past for failing to complete a timely written report of injury.
Although there is disputed evidence concerning the issue of whether plaintiff gave oral notice of the injury sufficient to place employer on notice (as discussed in Section II above, the majority has refused to read and consider the testimony of Ms. Farmer, Mr. Ewing, and others that plaintiff did not report his alleged injury to them and to weigh that evidence), a finding that the employee had a reasonable excuse for not providing written notice does not negate the Commission's obligation to evaluate whether defendants were prejudiced by the lack of timely written notice. See Westbrook v. Bowes, 130 N.C. App. 517, 503 S.E.2d 409
(1998); Jones v. Lowe's Co., 103 N.C. App. 73, 404 S.E.2d 165 (1991). Furthermore, this is not a case of actual notice because there were no eyewitnesses to the alleged seat bottoming and uncoupling incidents. A claimant's action is barred by Section 97-22 despite a reasonable excuse for failing to give timely written notice where the defendants have been prejudiced. Westbrook v. Bowes, supra; Jones v. Lowe's Co., supra.
In considering the issue of timely and sufficient notice, the Commission is required to look at the dual purpose of this provision: first, to enable the employer/carrier to provide immediate medical diagnosis and treatment with a view toward minimizing the seriousness of the injury; and second, to facilitate the earliest possible investigation of the facts surrounding the injury. Jones v. Lowe's Co., supra. The majority's opinion fails to address these issues, particularly in light of the serious question concerning whether plaintiff sustained an injury and the nature of the injury from an alleged May 20, 1999, incident. In the instant case, plaintiff sought no medical attention for his alleged May 20, 1999, injury until five months later in October 1999. In the interim, plaintiff received medical attention with Dr. Quigg, but did not complain of any back pain and did not advise Dr. Quigg that he had an accident or other traumatic injury event. The circumstances of this case present the issues of whether plaintiff received an injury on May 20, 1999, and whether that injury caused disability; these questions are complicated by the fact that plaintiff had pre-existing degenerative disc disease and by Dr. Pinzon's testimony that truck driving, without a traumatic event, is a significant factor in gradual onset degenerative disc disease. These questions could have been addressed if plaintiff had been examined by a doctor in May or June shortly after the accident and his condition at that time could have been compared with his pre-injury condition. The Commission, and defendants, do not have this information and were prevented from timely obtaining pertinent medical information by plaintiff's delay in reporting the injury and in his failure to follow company policy and the law requiring him to give written notice of injury.
The majority's opinion makes a summary statement concerning prejudice with no analysis of the evidence, has failed to consider all of the competent evidence, and fails to explain how it rectifies the conflict in the evidence.
Further, plaintiff cannot receive benefits for disability, if any, that occurred before he gave written notice to defendant in December 1999.See Eller v. Lawrence Leather Co., 24 S.E.2d 244 (1943); Cross v.Fieldcrest Mills, 19 N.C. App. 29, 198 S.E.2d 110 (1973).
 V. Failure to Give Credit for Unemployment benefits
The evidence before the Commission is that plaintiff applied for an received unemployment benefits, yet the majority fails to acknowledge this fact and to give credit for the benefits received from any disability due plaintiff. N.C.G.S. § 97-42.1.
For the foregoing reasons, I respectfully dissent.
This the ___ day of May 2002.
 S/______________ RENE C. RIGGSBEE COMMISSIONER