RACHEL N. JENKINS, Employee, Plaintiff-Appellant v. EASCO ALUMINUM CORP., Employer; HARTFORD SPECIALTY RISK SERVICES, Carrier, Defendant-Appellees

No. COA00-22

(Filed 6 February 2001)

1. **Workers' Compensation— plaintiff's doctor—testimony disregarded**

The Industrial Commission erred in a workers' compensation case by failing to indicate that it considered the testimony of a doctor specializing in vocational analysis when the Commission found that the job plaintiff returned to do after her injury was suitable employment and was a competitive job in the local job market because, while the Commission is the sole judge of the credibility of witnesses and may believe all or a part or none of any witness's testimony, it may not wholly disregard competent evidence.

2. **Workers' Compensation— failure to consider motion to submit newly discovered evidence—failure to rule on objection**

The Industrial Commission abused its discretion in a workers' compensation case by failing to consider plaintiff employee's motion to submit newly discovered evidence and by failing to rule

JENKINS v. EASCO ALUMINUM CORP.

[142 N.C. App. 71 (2001)]

on plaintiff's objection to defendant employer's submission of new evidence at the hearing before the full Commission.

### 3. Workers' Compensation— findings of fact—insufficient

The Industrial Commission failed to make sufficient findings of fact in a workers' compensation case to support its conclusion that plaintiff employee was not entitled to a 10% increase in compensation for defendant employer's alleged violation of a statutory safety requirement under N.C.G.S. § 97-12, because: (1) the Commission inexplicably failed to make any findings based on the testimony of plaintiff's coworker, although the deputy commissioner who originally heard this case made at least three findings based on her testimony; and (2) the coworkers' testimony appears to support plaintiff's position with regard to possible safety violations.

### 4. Workers' Compensation— permanent partial disability— failure to award error

The Industrial Commission erred in a workers' compensation case by failing to award plaintiff employee permanent partial disability for the loss of her fingers when the parties stipulated to a Form 25R signed by a doctor that found plaintiff had 75% disability to four fingers on her left hand.

Judge GREENE dissenting.

Appeal by plaintiff from opinion and award entered 6 July 1999 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 January 2001.

On 17 May 1993, plaintiff was injured in a compensable industrial accident while employed as a machine press operator for defendant Easco Aluminum Corporation. Plaintiff apparently experienced a period of dizziness, or blacked out, and the fingers on her left hand were crushed in the press. Metal guards designed to protect workers' hands were not in position on the press at that time, but were installed immediately after plaintiff's accident.

Plaintiff was paid compensation for eleven months, then returned to work at Easco in April 1994 as a quality control inspector of metal parts. Prior to her return to work, plaintiff received a 75% permanent partial disability rating to each of the four fingers on her left hand from her attending physician. Plaintiff was the junior employee in the quality control department, and was the first to be laid off in

November 1996 during a work slowdown at the plant. Plaintiff requested a hearing before the Industrial Commission and was awarded temporary total disability from the date of the layoff, entitlement to prosthetic fingers at defendants' expense, and the right to collect a 10% penalty pursuant to N.C. Gen. Stat. § 97-12 for unsafe working conditions leading to her injury. Both parties appealed to the Full Commission, which reversed the award of the Deputy Commissioner and found that plaintiff was entitled to nothing except prosthetic fingers. Plaintiff appealed to this Court.

> *Law Offices of George W. Lennon, by George W. Lennon and Michael W. Ballance, for plaintiff appellant.*

> *Cranfill, Sumner and Hartzog, L.L.P., by Brady W. Wells, for defendant appellees.*

HORTON, Judge.

Plaintiff was totally disabled as the result of her injuries from 17 May 1993 to 10 April 1994, and was paid temporary total disability pursuant to a Form 21 agreement during that time. The Industrial Commission approved the Form 21 agreement, which provided that defendants would pay compensation of $216.54 per week to plaintiff for "necessary" weeks. As a result of the agreement, plaintiff was "cloaked in the presumption of disability, and the burden was on the employer to rebut that presumption." *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 764, 487 S.E.2d 746, 750 (1997). The employer may rebut the presumption of continuing disability with medical evidence. Alternatively, the employer can "come forward with evidence to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations." *Kennedy v. Duke Univ. Med. Center*, 101 N.C. App. 24, 33, 398 S.E.2d 677, 682 (1990). "A 'suitable' job is one the claimant is capable of performing considering his age, education, physical limitations, vocational skills, and experience." *Burwell v. Winn-Dixie Raleigh*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994).

The employer may not rebut the presumption of continuing disability by creating a position within the employer's company which is " 'not ordinarily available in the competitive job market,' because such positions do not accurately reflect the employee's *capacity to earn* wages." *Stamey v. N.C. Self-Insurance Guar. Ass'n*, 131 N.C. App. 662, 666, 507 S.E.2d 596, 599 (1998) (citation omitted) (quoting

*Peoples v. Cone Mills Corp.*, 316 N.C. 426, 438, 342 S.E.2d 798, 806 (1986)).

Here, the defendant-employer sought to rebut the presumption of continuing disability by showing that plaintiff returned to work for Easco as a quality control inspector on 11 April 1994 at an hourly wage equal to, or higher than, her previous rate of pay. Plaintiff contends, however, that the Industrial Commission erred in finding that the quality control inspection job was suitable employment and was a competitive job in the local job market. Plaintiff argues that the inspector position was "make work" and was modified especially for her. As such, she argues, it was an unreliable indicator of her earning capacity and did not rebut the presumption that her disability continues.

Our Supreme Court has recently stated that "the fact that an employee is capable of performing employment tendered by the employer is not, as a matter of law, an indication of plaintiff's ability to earn wages." *Saums*, 346 N.C. at 764, 487 S.E.2d at 750 (citing *Peoples*, 316 N.C. at 434, 342 S.E.2d at 804.) The *Peoples* Court explained that

> [i]f the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market. The rationale behind the competitive measure of earning capacity is apparent. If an employee has no ability to earn wages competitively, the employee will be left with no income should the employee's job be terminated.

*Peoples*, 316 N.C. at 438, 342 S.E.2d at 806.

[1] Thus, our task on review is to determine whether the defendant-employer has met its burden of showing that the quality control inspector job plaintiff performed at Easco was "suitable" employment; that is, that it accurately reflected plaintiff's ability to compete with others for wages in the marketplace.

Our review of an opinion and award of the Industrial Commission requires that we first determine whether there is any competent evi-

dence on record which supports the findings of fact made by the Commission, and then determine whether those findings of fact support the Commission's conclusions of law. *Saums*, 346 N.C. at 765, 487 S.E.2d at 750-51. In response to plaintiff's contentions that the inspector job was not "suitable" employment, the Commission made the following findings of fact:

7. Plaintiff returned to work at Easco on 11 April 1994, in Quality Control as an Inspector, at a pay rate of $9.37 an hour, which was equal to or higher than her prior rate of pay. This job has been in existence at Easco since the plant opened. There are three employees on each shift who perform this function of mainly measuring and checking the quality of metal pieces within the plant. The inspector positions were held by female employees and all of them would need help from time to time lifting heavy parts.

8. The inspector job at Easco was a competetive [sic] job in the local job market. This was illustrated by a research analysis done by Annette Ruth, a certified rehab counselor with American Rehabilitation, in which various industries in Hertford County were found to have similar positions with similar job duties. In addition to being called quality inspectors, they were also called grader testers, and assurance inspectors.

9. Dr. Joan Rose viewed eight available jobs on videotape and approved only the Saw Helper position for plaintiff. However, the inspector position was not included on the video for her consideration, since there was not an opening at the inspector position at that time. There was no doubt that the inspector position was suitable employment for the plaintiff, in that she satisfactorily performed this job for two and a half years.

Based on these findings of fact, the Commission then made the following conclusion of law:

3. The inspector position at Easco has no similarities with the job that was characterized as "make-work" in the case of *Peoples v. Cone Mills*, 316 N.C. 426, 342 S.E.2d 798 (1986). In *Peoples*, the job offered to the claimant had never before existed at Cone Mills and it was created especially for plaintiff. Furthermore, the claimant was not required to work "if he did not feel like doing so." At Easco, plaintiff filled a position that had been at the plant for over 20 years. She was one of three inspec-

tors working that specific position at Easco, and she worked a complete shift. The job was not created for her, and it was not modified especially for plaintiff. The only help plaintiff needed was with the heavier parts, and that was true with all three females who worked as inspectors.

Here, there was testimony from plaintiff that there had been an inspector's job at Easco during her entire 20 years' employment there, that there were a number of tasks for her to perform on the job, that she was in fact able to perform the inspector job, and that her duties were similar to those of the other inspectors. There was evidence that plaintiff needed special assistance lifting the heavier parts, that such assistance was required for some 15 to 30 minutes of each work day, and that other female inspectors also needed assistance with the heavier parts. Further, there was evidence that plaintiff occasionally needed help reading blueprints and differentiating between critical and non-critical dimensions, but those difficulties were not unique to her. Still further, rehabilitation counselor Annette Ruth testified that plaintiff's quality control inspector job was generally available in the economy, that there were similar positions at several other companies in Hertford County, and that the inspector job as performed by plaintiff was not "make work" or "sheltered work."

Plaintiff argues, however, that defendant Easco made special accommodations, or modifications, to her inspector job to allow her to perform the job, and that she would not be able to compete for the job in the competitive job market, considering her physical and vocational limitations. See *Kennedy*, 101 N.C. App. at 33, 398 S.E.2d at 682 (explaining what the employer must demonstrate to successfully rebut the presumption of continuing disability). Plaintiff testified that she could do the inspector job, but had to have help "most of the time." She further testified that she needed help on a daily basis with various aspects of her job, such as lifting heavy parts and reading blueprints, and stated that she "wasn't really good in quality control."

In *Saums*, the defendant-employer offered evidence that a job as quality control clerk was available to the employee and paid the same wages the employee was earning prior to her accident-related disability. *Saums*, 346 N.C. at 764, 487 S.E.2d at 750. However, the evidence further tended to show that the quality control clerk position was

"a new position created for [plaintiff's] return to the work place." [sic] The job consisted of general office-type duties such as filing

and answering the telephone, and counting linens. The evidence showed that no one else had been placed in the position, either before or after plaintiff held the job, and that ordinarily the duties were included in other jobs. Additionally, based on the job description stipulated into evidence by the parties, plaintiff was not qualified for the job. The "Position Summary" lists the job as requiring a high school education, while plaintiff had only a ninth-grade education.

*Id.* In *Peoples*, the job offered to the injured employee had never existed and was created especially for the employee. Further, the employee in *Peoples* was not required to report for work "if he [did] not feel like doing so." *Peoples*, 316 N.C. at 429, 342 S.E.2d at 801. Unlike *Saums* and *Peoples*, the Commission found in the case before us that the quality control position held by plaintiff had been in existence at Easco since the plant opened, that there were other employees performing the job, and that the other employees were female and needed assistance from time to time with heavy parts. The Commission also found that there were similar inspecting jobs at various industries located in the Hertford County area.

In response to the evidence offered by defendant, plaintiff offered the testimony of Dr. Sheldon Downes, a Professor of Rehabilitation Counseling and Director of the Rehabilitation Counseling Program at East Carolina University. Dr. Downes specializes in vocational analysis and teaches prospective vocational professionals how to analyze jobs. Dr. Downes is also a designated vocational expert for the Office of Hearings and Appeals of the Social Security Administration where he has been analyzing jobs and testifying for more than 30 years. Dr. Downes discussed quality control jobs, characterizing them as coveted jobs usually awarded to deserving company employees, not to applicants "off the street." Consequently, Dr. Downes said that quality control inspector jobs were internal hire positions, rather than competitive jobs in the marketplace.

Dr. Downes also testified that he performed manual dexterity tests on plaintiff, and that the tests demonstrated that plaintiff is incapable of performing any industrial production work requiring hand or finger dexterity. Significantly, Dr. Downes opined that, because of plaintiff's physical limitations and her limited educational background and experience, there are no competitive jobs she can perform. He felt that plaintiff would need "very highly specialized" job placement assistance to locate a unique job plaintiff could perform.

Further, defendant's vocational expert, Ms. Ruth, testified that she examined Dr. Downes' report and had no reason to doubt either the results of the dexterity tests performed by Dr. Downes, or his conclusions based on the results of those tests.

Plaintiff argues that the Commission erred in failing to consider the testimony of Dr. Downes. We agree with plaintiff that "[w]hile the Commission is the sole judge of the credibility of witnesses and may believe all or a part or none of any witness's testimony, . . . it nevertheless may not wholly disregard competent evidence[,]" *Harrell v. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835, *disc. review denied*, 300 N.C. 196, 269 S.E.2d 623 (1980), "[a]lthough the Commission may choose not to believe the evidence after considering it . . . ." *Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997).

In *Lineback*, plaintiff contended that the Industrial Commission erred in failing to consider the testimony of his orthopedic surgeon regarding the cause of plaintiff's injury to his left knee. *Id.* at 680, 486 S.E.2d at 253-54. The testimony of the orthopedist corroborated plaintiff Lineback's statement that his injury was caused by a twisting motion as he exited his work vehicle. *Id.* at 681, 486 S.E.2d at 254. In its opinion, however,

> the Commission made no definitive findings to indicate that it considered or weighed Dr. Comstock's testimony with respect to causation. Thus, we must conclude that the Industrial Commission impermissibly disregarded Dr. Comstock's testimony, and, in doing so, committed error.

*Id.*

Here, Dr. Downes' testimony was certainly relevant to the exact point in controversy, whether the quality inspector job performed by plaintiff was an adequate indicator of her ability to compete for similar jobs in the marketplace. There was, however, no mention at all of Dr. Downes' testimony in the opinion and award, nor any finding from which we can reasonably infer that the Commission gave proper consideration to his testimony. *Compare Pittman v. International Paper Co.*, 132 N.C. App. 151, 510 S.E.2d 705, *disc. review denied*, 350 N.C. 310, 534 S.E.2d 596, *affirmed*, 351 N.C. 42, 519 S.E.2d 524 (1999), where the plaintiff made a similar argument with regard to a Dr. Markworth's deposition testimony, but there were "various findings throughout the Opinion and Award of the

Commission indicat[ing] consideration of Dr. Markworth's opinion." *Id.* at 159, 510 S.E.2d at 710.

As we are bound by the reasoning of *Lineback*, we hold that the Commission erred in failing to indicate that it considered the testimony of Dr. Downes. Consequently, the opinion and award of the Industrial Commission must be vacated, and the proceeding "remanded to the Commission to consider all the evidence, make definitive findings and proper conclusions therefrom, and enter the appropriate order." *Lineback*, 126 N.C. App. at 683, 486 S.E.2d at 255.

**[2]** Plaintiff also contends that the Commission erred by failing to consider her motion to submit newly discovered evidence and by failing to rule on her objection to defendant's submission of new evidence at the hearing before the Full Commission. We agree. We have recently held that it is an abuse of discretion for the Commission to fail to rule on motions to admit evidence and objections to the admissibility of evidence. *Allen v. K-Mart*, 137 N.C. App. 298, 303, 528 S.E.2d 60, 64 (2000) ("The failure of the Commission to timely address defendants' pending requests, motions, and objections without a doubt prejudiced the defendants in that they had no reason to seek other means by which they could protect their interests."). On remand, the Commission is to rule on plaintiff's pending motion and objections.

**[3]** Plaintiff also argues that the Commission did not make sufficient findings of fact to support its conclusion that plaintiff was not entitled to a 10% increase in compensation for defendant's alleged violation of a statutory safety requirement. Again, we agree with plaintiff. North Carolina law punishes willful violations of safety standards by employers. N.C. Gen. Stat. § 97-12 (1999) states that "[w]hen the injury or death is caused by the willful failure of the employer to comply with any statutory requirement or any lawful order of the Commission, compensation shall be increased ten percent (10%). . . . The burden of proof shall be upon him who claims an exemption or forfeiture under this section." The 10% penalty imposed on employers for willful OSHA violations is added to a successful plaintiff's total award. As to the increase in compensation, the Commission concluded that:

> 5. The plaintiff has the burden of proof to show a willful failure of the employer to comply with any statutory requirement. Since the plaintiff has not met this burden, the request for a ten

percent (10%) increase in compensation is hereby DENIED. N.C. Gen. Stat. § 97-12.

In support of that conclusion, the Commission found that:

10. Billy Saulter was a paid expert, who testified on behalf of plaintiff. . . . According to Mr. Saulter, there is an exception within OSHA requirements pertaining to Press Brakes. CFR 1910.212 states that guards should be applied *where possible*.

11. Melvin Gurganus has worked at Easco for twenty-five years . . . . Melvin Gurganus testified that he is not familiar with the *North Carolina Occupational Safety and Health Standards for General Industry* and is not involved with the plant's safety-related concerns such as compliance with OSHA regulations. He was also uncertain as to the requirements regarding guarding and any exception that may be provided for with regard to the Press Brake.

These findings fail to support the Commission's conclusion. Moreover, the Commission inexplicably failed to make any findings based on the testimony of plaintiff's coworker, Ms. Linda Ealey, although the Deputy Commissioner who originally heard this case made at least three findings based on her testimony. The testimony of Ms. Ealey appears to support plaintiff's position with regard to possible safety violations and should have been considered by the Commission in its opinion and award. The Deputy Commissioner made findings from the evidence that the press brake machine operated by plaintiff was not "guarded," as defined by the North Carolina OSHA manual, and that the machine did not prevent entry of the hands and fingers into the point of operation, in violation of OSHA standards. Without comment, the Full Commission failed to bring forward any of those crucial findings by the Deputy Commissioner. On remand, the Commission is to weigh and consider all evidence bearing on the alleged safety violations, then make appropriate findings of fact and conclusions of law based thereon.

[4] Finally, plaintiff contends that the Commission erred by failing to award her permanent partial disability for the loss of her fingers. We note that the parties stipulated to the Form 25R signed by Dr. Robert Kahn, which found that plaintiff has 75% disability to each of the index, second, third and fourth fingers of her left hand. No award to plaintiff was made by the Commission in its opinion and award however. On remand, after the Commission decides the issues of plain-

tiff's continuing disability and eligibility for temporary total disability payments, it shall enter such award as may be appropriate for plaintiff's loss of her fingers.

Vacated and remanded.

Judge TYSON concurs.

Judge GREENE dissents in part.

Judge GREENE dissenting in part.

As I believe there is no evidence in this record that other employers would hire plaintiff in a job with a wage comparable to her pre-injury wages, the opinion and award of the Commission must be reversed and remanded for an award of appropriate compensation.[1] *Saums v. Raleigh Community Hospital*, 346 N.C. 760, 765, 487 S.E.2d 746, 750 (1997) (there must be evidence "employers, other than defendant, would hire plaintiff to do a similar job at a comparable wage"). I would not, therefore, find it necessary to remand this case to the Commission for consideration of Dr. Downes' testimony, as required by the majority. I, therefore, respectfully dissent on this issue. I, however, agree with the majority with respect to the section 97-12 and the permanent partial disability (for loss of fingers) issues.

———————

1. Indeed, the Commission did not find as fact plaintiff was capable of obtaining a position as a quality inspector in the competitive job market, taking into account plaintiff's physical limitations.