DOROTHY HUNT, Employee, Plaintiff v. NORTH CAROLINA STATE UNIVERSITY, Employer, Self-Insured (KEY RISK MANAGEMENT SERVICES, Administering Agent), Defendant

No. COA07-1374

(Filed 6 January 2009)

**1. Workers' Compensation— vocational report—findings regarding documents used during depositions not required**

The full Industrial Commission did not improperly disregard in a workers' compensation case the expert opinions of a vocational expert by not mentioning his vocational report in its 13 April 2007 opinion and award because: (1) the expert did not testify either at the hearing or by deposition, but instead the report was relied upon by two testifying doctors; and (2) the Commission did make findings of fact regarding the doctors' deposition testimony and opinions, and it was not necessary for the Commission to make further findings regarding the documents used during the depositions.

**2. Workers' Compensation— change of condition—burden of proof on party claiming change**

The full Industrial Commission did not err in a workers' compensation case by concluding in its 13 April 2007 opinion and award that plaintiff employee has not suffered a change of condition because: (1) the depositions of two doctors did not indicate that plaintiff has developed a new condition, but instead seemed to indicate that plaintiff has been permanently and totally disabled since before the 6 February 2002 opinion and award; (2) even when the responses indicated that plaintiff has developed a new condition, the dialogue indicated it was not necessarily causally related to the injury but instead due to plaintiff's retirement and sedentary lifestyle; (3) the burden was upon plaintiff to prove a change in condition, and as the doctors were presented with lengthy hypotheticals and appeared to rely mostly, if not solely, on plaintiff's subjective history and current feelings, the Commission did not err by giving little weight to the depositions; and (4) although plaintiff contends several of the other findings of fact and conclusions of law are erroneous, it was irrelevant in light of the fact that plaintiff failed to establish a change in condition and the 6 February 2002 opinion and award could not be modified without a change in condition.

## 3. Workers' Compensation— medications—reasonableness for requirement of treatment

The full Industrial Commission did not err in a workers' compensation case by concluding medications prescribed by the authorized treating physician for plaintiff's fibromyalgia and its sequelae are not reasonably required for the treatment of plaintiff's compensable conditions because: (1) although plaintiff contends the Commission's consideration of an unsworn report denied her due process of law, there was no evidence that plaintiff was prevented from cross-examining the doctor who wrote the report through a deposition, but instead plaintiff chose not to do so and never objected to the evidence; and (2) the findings of fact supported the conclusion of law that the prescription of Mucinex, Armour Thyroid, and Belladonna were not reasonably required for the treatment of the injuries.

Appeal by plaintiff from opinion and award entered 13 April 2007 and opinion and award entered 20 August 2007 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 August 2008.

*Lennon & Camak, P.L.L.C., by George W. Lennon and Michael W. Bertics, for plaintiff appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Gary A. Scarzafava, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiff appeals from an opinion and award and order from the Full Commission of the North Carolina Industrial Commission. For the following reasons, we affirm.

## I. Background

The procedural background of this case is quite extensive as plaintiff has already been before this Court on a prior appeal, and thus we will only recite the background pertinent for an understanding of the appeal currently before us.[1] "On May 22, 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of her employment with defendant-employer when she fell on a wet floor, catching herself with her

---

1. *See Hunt v. N.C. State Univ.*, 159 N.C. App. 111, 582 S.E.2d 380, *disc. review of additional issues denied*, 357 N.C. 505, 587 S.E.2d 668 (2003).

right hand and falling on the right side of her posterior." In its 13 April 2007 opinion and award the Full Commission found that:

12. On February 6, 2002, the Full Commission entered an Opinion and Award finding that plaintiff "sustained injury to her right wrist and low back and developed symptoms of fibromyalgia" and that plaintiff *was not permanently and totally disabled as a result of the May 22, 1998 accident.* The Full Commission's Opinion and Award was affirmed by the Court of Appeals.

(Emphasis added.) The Full Commission further found "[i]n the matter at hand, plaintiff contends that she has sustained a change of condition[.]"

## II. Standard of Review

On 20 August 2007, the Full Commission filed an order denying plaintiff's motion to compel medical treatment. Plaintiff appeals from the 13 April 2007 opinion and award and the 20 August 2007 order. Plaintiff presents several issues on appeal, arguing that the Full Commission erred in its failure to consider certain evidence, that it erred as to certain findings of facts and legal conclusions, that it relied on incompetent evidence, and that it failed to apply the law properly. For the following reasons, we affirm.

### Standard of Review

Our review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." This Court reviews the Commission's conclusions of law *de novo.*

*Ramsey v. Southern Indus. Constructors, Inc.,* 178 N.C. App. 25, 29-30, 630 S.E.2d 681, 685 (citations omitted), *disc. review denied,* 361 N.C. 168, 639 S.E.2d 652 (2006). " 'Where there are sufficient findings of fact based on competent evidence to support the [Commission's] conclusions of law, the [award] will not be disturbed because of other erroneous findings which do not affect the conclusions.' " *Meares v. Dana Corp.,* 193 N.C. App. 86, 89-90, 666 S.E.2d 819, 823 (2008) (citation omitted).

### III. Consideration of Evidence

[1] Plaintiff first contends "the Full Commission improperly disregarded the expert opinions of the vocational expert, Stephen

Carpenter [("Mr. Carpenter")]" by not considering or mentioning Mr. Carpenter's vocational report in its 13 April 2007 opinion and award. Plaintiff cites to *Jenkins v. Easco Aluminum Corp.*, 142 N.C. App. 71, 541 S.E.2d 510 (2001); *Pittman v. International Paper Co.*, 132 N.C. App. 151, 510 S.E.2d 705, *aff'd per curiam*, 351 N.C. 42, 519 S.E.2d 524 (1999); and *Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 486 S.E.2d 252 (1997), arguing that this Court has formerly determined it was error for the Industrial Commission not to indicate or even mention in its opinion and award that it considered certain evidence presented before it.

However, *Jenkins*, *Pittman*, and *Lineback* are all distinguishable from the present case because in each of those cases the issue concerned the Industrial Commission's alleged failure to mention or indicate that it considered testimony or depositions. *See Jenkins*, 142 N.C. App. at 79, 541 S.E.2d at 515 ("[W]e hold that the Commission erred in failing to indicate that it considered the testimony of Dr. Downes. Consequently, the opinion and award of the Industrial Commission must be vacated, and the proceeding 'remanded to the Commission to consider all the evidence, make definitive findings and proper conclusions therefrom, and enter the appropriate order.' ") (citation omitted); *See Pittman*, 132 N.C. App. at 157, 510 S.E.2d at 709 ("Although the Commission did not explicitly find that it rejected the opinions expressed by Dr. Markworth in his first deposition, its opinion and award clearly demonstrates that it accepted the testimony given by Dr. Markworth in his second deposition, and thereby rejected the contrary testimony found in Dr. Markworth's first deposition. It is obvious that the Commission considered all the evidence before it and was not required to make an express finding that it did so."); *Lineback*, 126 N.C. App. at 681, 486 S.E.2d at 254 ("Dr. Comstock's testimony corroborates the information on plaintiff's Form 19 that the injury was caused by a "twisting motion" when he exited the rescue vehicle. However, in finding facts, the Commission made no definitive findings to indicate that it considered or weighed Dr. Comstock's testimony with respect to causation. Thus, we must conclude that the Industrial Commission impermissibly disregarded Dr. Comstock's testimony, and, in doing so, committed error.").

Here, unlike in *Jenkins*, *Pittman*, and *Lineback*, Mr. Carpenter did not testify either at the hearing or by deposition. *See Jenkins*, 142 N.C. App. at 79, 541 S.E.2d at 515; *Pittman*, 132 N.C. App. at 157, 510 S.E.2d at 709, *Lineback*, 126 N.C. App. at 681, 486 S.E.2d at 254. Thus, plaintiff is contending that we should extend the *Jenkins*, *Pittman*,

and *Lineback* line of cases to require findings of fact regarding a report, which was used by Dr. Hedrick and Dr. Kittelberger; we refuse to do so. Physicians frequently rely upon a variety of documents by other medical professionals in their diagnosis and treatment of patients as well as in forming their opinions and giving expert testimony. The Commission did make findings of fact regarding Dr. Hedrick's and Dr. Kittelberger's deposition testimony and opinions. It was not necessary for the Commission to make further findings regarding the documents used during the depositions. *See Graham v. Masonry Reinforcing Corp. of Am.*, 188 N.C. App. 755, 763-64, 656 S.E.2d 676, 682 (2008) ("[T]he commission is not required to make findings as to each fact presented by the evidence[.]"). This argument is overruled.

## IV. Change of Condition

[2] Plaintiff also contends that the Full Commission erred in concluding that "[p]laintiff has not suffered a change of condition" in its 13 April 2007 opinion and award. Plaintiff contends that "Dr. Kittelberger and Dr. Hedrick were the only medical experts to testify after the prior final Opinion and Award[,]" and thus essentially only their testimony should be considered on this issue.

"Whether there has been a change of condition is a question of fact; whether the facts found amount to a change of condition is a question of law." *West v. Stevens Co.*, 12 N.C. App. 456, 460, 183 S.E.2d 876, 879 (1971).

> Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Article, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any moneys paid but no such review shall be made after two years from the date of the last payment of compensation pursuant to an award under this Article, except that in cases in which only medical or other treatment bills are paid, no such review shall be made after 12 months from the date of the last payment of bills for medical or other treatment, paid pursuant to this Article.

N.C. Gen. Stat. § 97-47 (2007).

Section 97-47 of the North Carolina General Statutes provides that upon the application of an interested party "on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded." *A change of condition for purposes of N.C. Gen. Stat. § 97-47, is "a substantial change in physical capacity to earn wages, occurring after a final award of compensation, that is different from that existing when the award was made."* A change in condition may consist of either: a change in the claimant's physical condition that impacts his earning capacity"; "a change in the claimant's earning capacity even though claimant's physical condition remains unchanged"; "or a change in the degree of disability even though claimant's physical condition remains unchanged."

*"The party seeking to modify an award based on a change of condition bears the burden of proving that a new condition exists and that it is causally related to the injury upon which the award is based." A plaintiff must prove the element of causation "by the greater weight of the evidence[.]"*

*Shingleton v. Kobacker Grp.*, 148 N.C. App. 667, 670-71, 559 S.E.2d 277, 280 (2002) (citations omitted) (emphasis added). "In all instances the burden is on the party seeking the modification to prove the existence of the new condition and that it is causally related to the injury that is the basis of the award the party seeks to modify." *Blair v. American Television & Communications Corp.*, 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996) (citations omitted). Thus, in order to modify the 6 February 2002 opinion and award which found "that plaintiff was not permanently and totally disabled" plaintiff must prove "that a new condition exists" and must also prove "by the greater weight of the evidence[,]" "that it is causally related to the injury[.]" *See Shingleton*, 148 N.C. App. at 670-71, 559 S.E.2d at 280; *see also Blair*, 124 N.C. App. at 423, 477 S.E.2d at 192.

Furthermore,

"Change of condition refers to conditions different from those existent when the award was made; and a continued incapacity of the same kind and character and for the same injury is not a change of condition. [T]he change must be actual, and not a mere change of opinion with respect to a pre-existing condition. Change of condition is a substantial change, after a final award of

compensation, of physical capacity to earn and, in some cases, of earnings."

. . . Stated negatively, "[c]hanges of condition occurring during the healing period and prior to the time of maximum recovery and the permanent disability, if any, found to exist at the end of the period of healing are not changes of condition within the meaning of G.S. 97-47." Furthermore, this Court has held that "a mere change of the doctor's opinion with respect to claimant's preexisting condition does not constitute a change of condition required by G.S. 97-47."

*Meares*, 193 N.C. App. at 91, 666 S.E.2d at 823-24 (citations omitted).

The Full Commission found as fact:

24. Dr. Kittelberger, an anesthesiologist, initially testified during his deposition that plaintiff was disabled. However, this opinion was given following hypothetical questions posed by plaintiff's counsel based on the assumption that plaintiff was removed from her light duty position by Dr. Yellig. The undersigned hereby find that the facts forming the basis of the hypothetical posed by plaintiff's counsel are not supported by the record in this case and are not found as facts herein.

. . . .

26. Dr. Kittelberger determined that plaintiff was disabled because she was deconditioned as a consequence of her leaving work and assuming a sedentary lifestyle and that her deconditioning is not necessarily due to her injury. Dr. Kittelberger was unable to opine as to whether plaintiff could have continued to work had she not elected to retire on State Retirement System disability. The undersigned hereby find that Dr. Kittelberger's testimony does not establish that plaintiff was not and is not able to engage in any employment as a result of her compensable injury.

. . . .

30. Dr. Hedrick testified that his opinions were based on the assumption that plaintiff could not work. The hypothetical questions posed to Dr. Hedrick asked him to assume that plaintiff was attempting to return to highly modified work when Dr. Yellig took her off from work and she was found to be qualified for State Retirement System disability. The hypothetical incorrectly assumed that plaintiff had an unsuccessful return to work, that

she returned to a highly modified job, and that she was in fact removed from this position by Dr. Yellig. Further, Dr. Hedrick's opinions were based on plaintiff's subjective history. Accordingly, the undersigned give little weight to Dr. Hedrick's opinion.

. . . .

36. The opinions of Dr. Kittelberger and Dr. Hedrick that plaintiff is not able to work are given little weight as they did not perform a functional capacity evaluation or other testing to measure plaintiff's ability to work. The opinions of these doctors relied on inaccurate information (including Dr. Kittelberger's belief that the FCE results indicated that plaintiff could not work) and on plaintiff's subjective history, and are not given as much weight as the functional capacity evaluation.

The Full Commission concluded that "[p]laintiff has not suffered a change of condition."

As to Dr. Kittelberger, in his deposition he indicates plaintiff is "totally disabled" and "unemployable[.]" However, these responses, as noted by the Full Commission, are immediately preceded by approximately a two and one-half page hypothetical question.

The following dialogue also took place,

Q. (By Mr. Scarzafava) so that we can understand you, a person such as Mrs. Hunt, who has degenerative disc disease, who has fibromyalgia, if they become a couch potato, or otherwise very sedentary in their daily lifestyles, they may have de-conditioning of the muscles, of the joints, and thus it would be more painful and difficult for them to engage in increased activity, would that be correct?

A. Yes.

Q. Okay. When you first saw her in March 2002, Mrs. Hunt had retired from employment since 1999, so she had been out two or three years, is that correct?

A. She had been two or three years, yes.

Later Dr. Kittelberger was also asked:

Q. Okay. Doctor, in your making the assessment that she was not employable during the time period that you were treating her from March 2002 through August 2003, was one of the factors that

HUNT v. N.C. STATE UNIV.

[194 N.C. App. 662 (2009)]

you took into consideration, the fact that she hadn't worked for a couple of years?

A. That was one—one factor.

Q. Okay. Was another factor that it appeared that she had de-conditioning, which may be related to her lack of activity since retirement?

A. One factor.

Furthermore, Dr. Kittelberger was also asked, "Likewise, you can't tell us today that if Mrs. Hunt had continued to work as opposed to retiring on long-term disability whether she'd be able to work at this point in time?" to which Dr. Kittelberger responded, "No, I don't think anyone can."

Dr. Kittelberger was also asked,

Q. And, Doctor, so we can understand it, your opinion that she's had a change in her wage earning capacity since 1999 to now, if I understand your testimony earlier today, you don't know whether or not she'd have that change if she had continued to work as opposed to electing to go out on state long-term disability?

A. No. I can't definitely say that.

In his deposition Dr. Kittelberger was also asked, "As I understand it, you performed no actual testing on Mrs. Hunt to determine what her physical capabilities were, is that correct?" Dr. Kittelberger responded, "That's correct."

Dr. Hedrick was asked, over halfway through his deposition, "In formulating your opinions in this case, have you assumed that Dorothy Hunt was unable to perform any employment?" Dr. Hedrick responded, "That's correct." Also, as noted by the Full Commission, some of Dr. Hedrick's responses were in response to an extremely long hypothetical question. Dr. Hedrick also admitted that he did not send plaintiff for a functional capacity evaluation.

Also, the following dialogue took place during Dr. Hedrick's deposition,

Q. Okay. So, as to your actual personal knowledge [in regard to plaintiff's living arrangements and daily activities], all you know is what she's told you?

A. That's right.

Q. And she hasn't told you very much.

A. Right.

Again we reiterate:

> Our review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *"The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings."* This Court reviews the Commission's conclusions of law *de novo.*

*Ramsey,* 178 N.C. App. at 29-30, 630 S.E.2d at 685 (citations omitted) (emphasis added).

After a thorough review of Dr. Kittelberger's and Dr. Hedrick's depositions, we conclude that "there is . . . competent evidence to support the findings of fact[.]" *Id.* at 29, 630 S.E.2d at 685. Overall, the depositions do not indicate that plaintiff has developed a "new condition[,]" but instead seem to indicate that plaintiff has been permanently and totally disabled since before the 6 February 2002 opinion and award. *Shingleton,* 148 N.C. App. at 670, 559 S.E.2d at 280. Furthermore, even when the responses indicate that plaintiff has developed a "new condition" the dialogue indicates it is not necessarily "causally related to the injury[,]" but instead due to plaintiff's retirement and sedentary lifestyle. *See id.* As the doctors were presented with lengthy hypotheticals and appeared to rely mostly, if not solely, on plaintiff's subjective history and current feelings, we do not conclude that the Commission erred in giving their depositions "little weight[.]"

Here, the burden was upon plaintiff to prove a change in condition. *See id.* As "little weight" was given to Dr. Kittelberger's and Dr. Hedrick's testimony, we conclude that " 'the findings of fact justify the conclusion[] of law[,]' " *Ramsey,* 178 N.C. App. at 29, 630 S.E.2d at 685 (citation omitted), that "[p]laintiff has not suffered a change of condition." This argument is overruled.

Plaintiff also argues that several of the Full Commission's other findings of fact and conclusions of law are erroneous; however, this is irrelevant in light of the fact that plaintiff failed to establish a change in condition because without a change in condition, the 6

February 2002 opinion and award cannot be modified. *See Shingleton*, 148 N.C. App. at 670, 559 S.E.2d at 280. As " 'there are sufficient findings of fact based on competent evidence to support the [Commission's] conclusion[] of law[] [that "[p]laintiff has not suffered a change of condition"], the [award] will not be disturbed because of other erroneous findings which do not affect [this determinative] conclusion[]." *Meares*, 193 N.C. App. at 89-90, 666 S.E.2d at 823. Thus, plaintiff's second, third, and sixth briefed arguments are also overruled.

## V. Competency of Evidence

**[3]** Lastly, plaintiff contends that "the Full Commission erred in concluding medications prescribed by the authorized treating physician, Dr. Hedrick, for plaintiff's fibromyalgia and its sequelae are not 'reasonably required for the treatment' of plaintiff's compensable conditions." Plaintiff argues that "[t]he only evidence that disputes Dr. Hedrick's opinions is the unsworn report of Dr. Jeffrey Siegel . . . [which is] incompetent." Plaintiff analogizes her case with *Allen v. K-Mart* in which this Court reversed and remanded a Full Commission opinion and award, according to plaintiff, "for findings based on reports alone without any opportunity for cross-examination." 137 N.C. App. 298, 528 S.E.2d 60 (2000). Plaintiff further contends that the Commission's consideration of this unsworn report has denied her due process of law.

However, plaintiff fails to mention that in the *Allen* case "defendants filed five separate objections to the Commission's allowance of the independent medical examinations[.]" *Id.* at 302, 528 S.E.2d at 63-64. Here, during Dr. Hedrick's second deposition, defendant's attorney specifically reopened the record solely to offer two exhibits, one of which was Dr. Siegel's report, to which plaintiff's attorney responded, "and the plaintiff has no objection." Thus, when defendant submitted an exhibit that read in pertinent part,

> [t]he available literature does <u>not</u> support the use of hormonal analogs (such as Armour thyroid), nor mucinex (and note that Ms. Hunt's sinusitis preexisted her workplace injury). I cannot locate any randomized controlled studies which indicate an appropriate role for these meds, or other meds not specifically included in the synopsis given above. Accordingly, it would not be medically prudent or appropriate to Rx these meds for FMS[,]

plaintiff's attorney specifically stated he had no objections. Furthermore, unlike in *Allen*, there is no evidence that plaintiff was

prevented from cross-examining Dr. Siegel through a deposition. *See Allen*, 137 N.C. App. at 302-03, 528 S.E.2d at 63-64. Instead it appears that plaintiff simply chose not to do so. From the record before us it appears plaintiff never objected to the evidence, so the Commission did not err by considering the evidence.

The Full Commission found from the report,

9. The Employer had the recommended use of Mucinex and Armout [sic] Thyroid reviewed by Jeffrey Siegel, M.D. a board certified Neurologist. Dr. Siegel reported that the accepted treatment for fibromyalgia includes: (1) daily exercise regimen, (2) sleep hygiene, (3) attention to depression, and (4) pain medications. Dr. Siegel did not find any evidence based medical research to support the treatment of fibromyalgia with Mucinex, Armour Thyroid, or other medications not used for sleep hygiene, depression, or pain management. After giving his initial report, Dr. Siegel had the opportunity to examine Mrs. Hunt and explained to her, as stated in his 24 March 2005 report, that isolated case reports and internet literature are not of a high evidential value, and that he recommends relying upon evidence based medicine, such as double-blind research studies.

This finding and the other findings of fact by the Full Commission are supported by competent evidence. *See Ramsey*, 178 N.C. App. at 29, 630 S.E.2d at 685. Furthermore, the findings of fact support the conclusion of law that "[t]he prescription of Mucinex, Armour Thyroid, and Belladonna is not reasonably required for the treatment of the injuries[.]" This argument is overruled.

VII. Conclusion

For the aforementioned reasons, we affirm the 13 April 2007 opinion and award and the 7 August 2007 opinion and order from the Full Commission.

Affirmed.

Judges McGEE and STROUD concur.

Concurred prior to 31 December 2008.