NO. COA13-977

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

DOUGLAS SCOTT FILE,
　　　Employee-Plaintiff,

　　　v.

NORANDAL USA, INC.,
　　　Employer,

ACE USA,
　　　Carrier, Defendants.

From N.C. Industrial
Commission,
No. 518257

Appeal by Douglas Scott File from Opinion and Award entered 10 May 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 7 January 2014.

> *Wallace and Graham, P.A., by Edward L. Pauley, for plaintiff.*

> *Hedrick, Gardner, Kincheloe, & Garofalo, L.L.P., by Paul C. Lawrence, Zachary V. Renegar, and M. Duane Jones, for defendants.*

ELMORE, Judge.

Douglas Scott File (plaintiff) appeals from the North Carolina Industrial Commission's denial of his claim for workers' compensation benefits pursuant to N.C. Gen. Stat. § 97-53. After careful review, we affirm the Opinion and Award of the Industrial Commission.

## I. Background

On 28 April 2005, plaintiff filed a Form 18 "Notice of Accident to Employer and Claim of Employee" alleging that his close proximity to high energy machinery at his workplace exposed him to radiation that contributed to the development of brain cancer. Plaintiff's employer, Norandal USA, Inc. (defendant), denied plaintiff's claim. Thereafter, the claim was assigned for hearing before the Industrial Commission, and Deputy Commissioner J. Brad Donovan denied plaintiff's claim for workers' compensation benefits. Plaintiff subsequently appealed to the Full Commission (the Commission). In an Opinion and Award filed 10 May 2013, the Commission ruled that plaintiff failed to "prove that he suffer[ed] from an occupational disease compensable within the meaning of N.C. Gen. Stat. § 97-53(13)" and denied his claim. Plaintiff now appeals to this Court from the Commission's 10 May 2013 Opinion and Award.

## II. Facts

Defendant is a company that owns an aluminum plant (the plant) in Salisbury and manufactures aluminum foil. Plaintiff worked for defendant in the plant from 1984 until 2007. Between the years of 1984 and 1994, plaintiff was employed as a mill operator. The mill is a machine that transforms a thick sheet of aluminum to a

thin sheet of aluminum foil. The plant has five mills in operation, and each utilizes a "Measurex" device (collectively "the devices"), which sends x-ray beams through an aluminum sheet to measure its thickness. Once the thickness is determined, the device sends the data to a computer that modifies the mill rolls to make sure the aluminum thickness is appropriate.

Plaintiff worked in the maintenance department from 1994 until his retirement in 2007. Plaintiff was diagnosed with brain cancer in 2000, had surgery to remove a benign tumor, and returned to work after six months. The brain cancer returned in 2004, and once again plaintiff missed time from work to treat his condition. Plaintiff returned to work, only to be diagnosed with brain cancer again and develop a malignant tumor in 2007. Due to complications from the third surgery, plaintiff was unable to perform his occupational responsibilities and he retired on disability.

During plaintiff's employment, his work duties included preventative maintenance and repairs on the mills, which exposed him to the devices on a daily basis. Plaintiff testified that he worked within three to five feet of the devices while they were running. This was corroborated by Terry Walker, a colleague of plaintiff's, who performed the same job responsibilities. Plaintiff called Dr. Max Costa and Dr. David Schwartz as expert

witnesses.  They both opined that plaintiff's employment increased his risk of developing brain cancer due to radiation exposure from the devices.

The devices were manufactured by Honeywell Corporation, and Robert Kesslick was Honeywell's on-site technician during plaintiff's employment.  Kesslick maintained the devices' control system and made repairs on the devices.  Defendant called Kesslick as a witness, and he testified that the closest an individual could get to Mills #2 and #3 was five feet and ten feet on Mills #1 and #4.  He further stated that throughout his years testing the devices, he "never received a dosage of any recordable level of radiation."  Defendant tendered Dr. Robert Dixon as an expert in x-ray physics with subspecialties in radiation shielding and radiation dosimetry.  He concluded that any radiation exposure to employees from the devices would be "virtually non-existent[.]"

At the hearing, plaintiff introduced the on-site device safety manual provided by Honeywell to defendant, an "Ionizing Radiation Fact Book[,]" and the "BEIR Study" to contradict defendant's witnesses about the devices' radiation levels and the effects of radiation on humans.

### III. Analysis

### a.) Consideration of Evidence

Plaintiff argues that the Commission erred by disregarding documentary evidence introduced by him during Dixon's testimony and Kesslick's deposition.  We disagree.

Review of an Opinion and Award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law.  This 'court's duty goes no further than to determine whether the record contains any evidence tending to support the finding.'" *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation omitted) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)).  This Court conducts a *de novo* review of the Commission's conclusions of law.  *Starr v. Gaston Cnty. Bd. of Educ.*, 191 N.C. App. 301, 305, 663 S.E.2d 322, 325 (2008).

Before the Commission makes findings of fact, it "must consider and evaluate all of the evidence.  Although the Commission may choose not to believe the evidence after considering it, it may not wholly disregard or ignore competent evidence." *Lineback v. Wake Cnty. Bd. of Comm'rs*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997) (citations omitted).  Where the Commission's Opinion and Award fails to indicate that it considered testimony "relevant to the exact point in controversy," it "must be vacated, and the proceeding remanded to the Commission to consider all the evidence, make definitive findings

and proper conclusions therefrom, and enter the appropriate order." *Jenkins v. Easco Aluminum Corp.*, 142 N.C. App. 71, 78-79, 541 S.E.2d 510, 515 (2001) (citation and quotation omitted). However, we have specifically declined to "require findings of fact regarding a report" used during depositions. *Hunt v. N. Carolina State Univ.*, 194 N.C. App. 662, 666, 670 S.E.2d 309, 312 (2009).

In *Hunt*, the plaintiff argued on appeal that the Commission erroneously ignored an opinion of an expert "by not considering or mentioning [the expert's] vocational report" in its Opinion and Award. *Id*. at 664-65, 670 S.E.2d at 311. The expert did not testify at the hearing in front of the Commission or by deposition. *Id*. at 665, 670 S.E.2d at 312. Instead, two doctors relied on the expert's report during their testimony. *Id*. at 666, 670 S.E.2d at 312. Because the Commission made specific findings as to the doctors' testimony, this Court ruled that "[i]t was not necessary for the Commission to make further findings regarding the documents used during the depositions." *Id*.

Similarly, plaintiff in this case introduced the safety manual, the "Ionizing Radiation Fact Book[,]" and the "BEIR Study" to contradict Dixon's testimony about the devices' radiation levels and the effects of radiation on humans. The safety manual was also discussed in detail during Kesslick's deposition. While the Commission did not specifically mention the documents in its Opinion

and Award, it made detailed findings about both Dixon's and Kesslick's testimony. Thus, similar to *Hunt*, the Commission was not required to make specific findings of fact related to the documents used during the testimony of Dixon and Kesslick. *See Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 139, 502 S.E.2d 58, 62 (1998) (quotation omitted) (acknowledging that while the Commission "did not specifically find that it was rejecting the evidence" in support of appellant's contention, "[s]uch negative findings are not required"); *See also Graham v. Masonry Reinforcing Corp. of Am.*, 188 N.C. App. 755, 763, 656 S.E.2d 676, 682 (2008)("[T]he Commission is not required to make findings as to each fact presented by the evidence[.]").

**b.) Findings of Fact**

Next, plaintiff argues that the trial court erred in making findings of fact that were not supported by any competent evidence. Specifically, plaintiff challenges findings of fact #11, #13, #6, and #8. We disagree.

"If there is any competent evidence supporting the Commission's findings of fact, those findings will not be disturbed on appeal despite evidence to the contrary." *Graham*, 188 N.C. App. at 758, 656 S.E.2d at 679.

First, plaintiff challenges part of finding #11, which states:

> 11. It is Dr. Dixon's opinion that plaintiff was not exposed to radiation above background levels, and therefore, that his employment did not contribute to his development of brain

cancer.

Dixon testified that he measured the level of background radiation (radiation levels found in the general environment) outside the facility and next to the device while it emitted x-rays. Dixon stated that he "couldn't detect anything above the natural background when [he] made the measurement." He "got as close as [he] could with [his] detector, got nothing, and also made a measurement where people would normally be around called the bridle area." He "looked around and nothing could be found." Based on his measurements, Dixon concluded that "the chances of any radiation above -- significantly above background would be very, very small, if any. I couldn't measure any. And I got a lot closer than [plaintiff] would normally be if he were exposed. . . . In other words, it couldn't have produced this cancer." Clearly, finding #11 is supported by competent evidence.

Plaintiff also challenges finding #13, which states, in relevant part,

> 13. Dr. Costa's opinion that plaintiff's employment with defendant-employer placed him at an increased risk of developing brain cancer and that it was a significant contributing factor to his development of brain cancer was predicated on a belief that there was a "general leakage of radiation" in the area in which plaintiff worked, an assumption which is not borne out by the testimony of Mr. Kesslick and Dr. Dixon. With regard to increased risk specifically, Dr. Costa testified, "I imagine those machines

give off radiation so I think that that [sic] would be higher than the general public . . ." When Dr. Costa testified on cross examination that "these machines tend to leak all over, . . ." he offered no basis in fact for that opinion and went on to concede that he is not an expert in x-ray leaks. Dr. Costa did not know how much or how far radiation is emitted from the Honeywell/Measurex devices, nor did he have any information about how much radiation above background, if any, plaintiff might have been exposed to in his employment.

Costa admitted that he did not know "the amount of any radiation that [plaintiff] might have been exposed to[.]" He testified that plaintiff's "exposure would be greater than the general population" if plaintiff was merely "near" the machine. However, he conceded that he did not know how far the devices emit radiation. Costa then testified that "[t]hese machines tend to leak all over, so, you know, I just assumed that there was a . . . general leakage of radiation[.]" This assertion contravenes Dixon's testimony that the "x-ray tube is shielded against leakage" and has a "very little chance of scatter." Furthermore, Costa stated that he is "not an expert" with regard to radiation machines or x-ray leaks. The aforementioned testimony indicates that the Commission's finding #13 is supported by competent evidence.

Plaintiff also contests a portion of finding #6, which states:

6. During operation, it is impossible for any employee to get within ten feet of the Measurex device on Mills #1 and #4. An employee can get no closer than five feet to the sensor on Mills #2, #3, and #5.

Kesslick testified that a person "couldn't get within ten feet" of the device on Mill #1 or #4. While Mills #2, #3, and #5 were in operation, Kesslick stated that an individual "couldn't get within five feet of [them]." Thus, Kesslick's testimony provided the Commission with competent evidence to support finding #6.

Plaintiff also argues that the Commission's finding of fact #8 is not supported by competent evidence because it relies on Kesslick's radiation badge readings to conclude that no excessive radiation levels emitted in the work area. Specifically, plaintiff argues that when Kesslick worked on the devices, the mills would be shut down such that the devices were unable to emit any radiation. Finding of fact #8 states:

> 8. [a]ccording to Mr. Kesslick, the Honeywell/Measurex control system has multiple safety interlock devices that function to prevent the x-ray from emitting radiation when not in operation. These safety devices were checked at six-month intervals and were never found to be malfunctioning. Mr. Kesslick also wore a radiation dosimetry badge designed to record any type of radiation dose. During the time he worked at defendant-employer's plant, Mr. Kesslick never received a dosage of any recordable level of radiation.

The testimony indicates that Kesslick has worked for Honeywell-Measurex for twenty-five years as a maintenance control technician. One of his responsibilities is to conduct radiation safety tests on the devices every six months. When Kesslick performed these tests,

he always wore a radiation badge, which is "designed to record any type of radiation dose[.]" During the testing, Kesslick ensured that amber lights were illuminated on the device. This indicated that power was supplied to the x-ray tube, allowing the device to produce x-rays. He also verified that a red lamp was on, which indicated that the device's shutter was open. When the shutter was open, x-rays were emitted. Thus, when Kesslick tested the devices, they emitted x-rays, and his radiation badge could appropriately measure any radiation exposure. Accordingly, the Commission's find of fact #8 is supported by competent evidence.

**c.) Causation**

Next on appeal, plaintiff argues that the Commission erroneously relied on Dixon's testimony that plaintiff's "employment did not contribute to his development of brain cancer." We disagree.

Plaintiff bears the burden of establishing the elements of an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13). *Gibbs v. Leggett & Platt, Inc.*, 112 N.C. App. 103, 107, 434 S.E.2d 653, 656 (1993). Plaintiff must show that the occupational disease is

> (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be a causal connection between the disease and the [claimant's] employment.

*Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983) (citations and quotation omitted). Thus, the Commission must, in part, determine that plaintiff's employment "exposed him to a greater risk of [disease] than members of the public generally[.]" *Perry v. Burlington Indus., Inc.*, 80 N.C. App. 650, 655, 343 S.E.2d 215, 219 (1986). Only once such a determination is made can the Commission decide whether the "occupational exposure substantially contributed to development of the disease." *Id*. Once the issue of causation is reached, if an "injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) (citation omitted).

Here, plaintiff mischaracterizes Dixon's testimony as an opinion about causation rather than testimony about the level of exposure to radiation. Plaintiff urges us to rule, pursuant to *Click*, that Dixon's testimony was not competent evidence because he is not an expert in providing medical causation testimony. However, we find *Click* inapplicable in the present case because the crux of Dixon's testimony related to whether plaintiff's exposure to the devices subjected him to higher radiation levels than the general public. Through this lens, Dixon's testimony was competent within the subject matter of his expertise in "x-ray and physics with subspecialties in

radiation shielding and radiation dosimetry." The Commission reflected Dixon's exposure testimony in its finding of fact, which states "[i]t is Dr. Dixon's opinion that plaintiff was not exposed to radiation above background levels, and therefore, that his employment did not contribute to his development of brain cancer." Since the Commission found that plaintiff was not exposed to radiation above background levels, it did not need to rely on testimony as to whether such exposure substantially contributed to the development of plaintiff's brain cancer. Thus, the Commission properly relied on Dixon's testimony and concluded that plaintiff's theory was mere "speculation of exposure which is not supported by the greater weight of the record" and "[p]laintiff has failed to show that his condition . . . was caused by exposure to radiation."

**d.) Compensable Claim**

Plaintiff argues that contrary to the Commission's decision, he met his burden as to each element for a compensable claim under N.C. Gen. Stat. § 97-53(13). Specifically, plaintiff argues that there was no competent evidence to support the Commission's finding that plaintiff was not at an increased risk for the development of cancer from radiation exposure compared to the general public. We disagree.

A plaintiff is not required to prove that he was exposed to a specific quantity of a harmful agent to present a compensable claim. *Gay v. J.P. Stevens & Co., Inc.*, 79 N.C. App. 324, 333-34, 339 S.E.2d

490, 496 (1986). However, a plaintiff must establish that "the substance [to which he was exposed] is one to which the worker has a greater exposure on the job than does the public generally, either because of the nature of the substance itself or because the concentrations of the substance in the workplace are greater than concentrations to which the public generally is exposed." *Matthews v. City of Raleigh*, 160 N.C. App. 597, 605-06, 586 S.E.2d 829, 836-37 (2003) (citation omitted).

Here, the Commission considered all the evidence and assigned weight to each piece of evidence in making its final determination. Defendant's evidence showed the following: 1.) the device's shield against radiation leakage and has an extremely low probability of scatter; 2.) employees cannot stand within five feet of the devices; 3.) employees have no direct contact with the devices; 4.) Kesslick never received a measurable level of radiation during his testing of the devices; and 5.)the radiation levels next to the devices were no different than normal background radiation that is found in all environments. Furthermore, the Commission found that plaintiff did not meet his burden, not because of his own failure to quantify the degree of exposure, but because the Commission "plac[ed] greater weight on the testimony of [Kesslick] and . . . Dr. Dixon" than plaintiff's witnesses. Thus, the evidence supports the Commission's

finding that plaintiff did not have a greater exposure to radiation than the general public.

## IV. Conclusion

In sum, the Commission properly considered all of the evidence, made findings of fact that were supported by competent evidence, appropriately accepted evidence of causation, and correctly found that the claim was not compensable.  Thus, we affirm the 10 May 2013 Opinion and Award of the Commission.

Affirmed.

Judge McGEE and Judge HUNTER, Robert C., concur.